OPINION OF THE COURT
Andrew V. Siracuse, J.
Plaintiffs, Janise Belmore and Tyrone Michael, have commenced separate actions against the defendants alleging negligence and gross negligence and products liability.[1] Defendants have moved pursuant to CPLR 3211 (a) (5) to dismiss the complaints in each action on the ground that they are untimely under the applicable Statute of Limitations. Since the legal issues are the same in both cases, the cases are being joined solely for the purpose of the decision on this motion.
Plaintiffs Belmore and Michael are former employees of Rochester Products Division of General Motors (RPD). Belmore worked at RPD from March 1977 to January 1979. Michael was employed at the facility between August 1970 and August 1973. Both plaintiffs allege that during their *509 employment at RPD they were exposed to zinc fumes, gas and particles which were emitted and released from zinc products sold by defendants to RPD. It is claimed that this exposure "precipitated, activated and/or aggravated” their previously dormant and asymptomatic conditions of multiple sclerosis (MS). According to records of treatment rendered to plaintiffs and plaintiffs’ own admissions, plaintiff Michael was diagnosed as having MS in 1972 and plaintiff Belmore was diagnosed in I960.[2] The moving defendants, Eastern Alloys, Inc., Penóles Metals & Chemicals, Inc., Rochester Smelting & Refining Co., Inc. and Roth Bros. Smelting Corp. were served the summons and complaint between October 12th, 1988 and June 26th, 1989.
CPLR 214 (5) provides that an action to recover damages for personal injury must be commenced within three years except as provided in CPLR 214-b, 214-c, and 215. The law is well established that where the claim arises from exposure to an allegedly harmful substance the three-year Statute of Limitations begins to run on the date that the plaintiff is last exposed to the substance. (Matter of Steinhardt v Johns-Manville Corp., 54 NY2d 1008; Thornton v Roosevelt Hosp., 47 NY2d 780; Schwartz v Heyden Newport Chem. Corp., 12 NY2d 212; Schmidt v Merchants Desp. Transp. Co., 270 NY 287.) Under the last date of exposure rule, both actions would be time barred. Michael last worked at RPD, and thus was last exposed to zinc, in 1973. His negligence, gross negligence and product liability claims were time barred after 1976. Belmore last worked at RPD in January 1979. Her claims under the last date of exposure rule were time barred as of January 1982. Under CPLR 214 (5) and the last date of exposure rule, the commencement of these actions in 1988 and thereafter is clearly untimely.
As noted, however, CPLR 214 (5) excepts from its coverage those cases which come within the coverage of CPLR 214-c. If plaintiffs come under section 214-c, their actions would be *510 timely. Section 214-c was enacted in 1986 to change the "last day of exposure” accrual rule of Schmidt (supra), and its progeny to a "date of discovery” rule. The "date of discovery” rule is, in general, applicable prospectively to injuries discovered after the July 1, 1986 effective date of the statute. The limits of applicability of the statute are set forth at subdivision (6) of section 214-c in three criteria which, if satisfied, preclude coverage of the date of discovery rule. Section 214-c (6) provides as follows:
"6. This section shall be applicable to acts, omissions or failures occurring prior to, on or after July first, nineteen hundred and eighty-six, except that this section shall not be applicable to any act, omission or failure:
"(a) which occurred prior to July first, nineteen hundred eighty-six, and
"(b) which caused or contributed to an injury that either was discovered or through the exercise of reasonable diligence should have been discovered prior to such date, and
"(c) an action for which was or would have been barred because the applicable period of limitation had expired prior to such date.”
The plaintiffs concede that the criteria set forth at paragraphs (a) and (c) above are met. The parties disagree, however, over the application of the criteria contained in paragraph (b), that is, whether plaintiffs discovered or should have discovered their injury prior to July 1, 1986. More precisely, the parties disagree over the interpretation of the phrase "discovery of the injury” and what constitutes plaintiffs’ injury.
As one commentator has noted, "the quicksilver certainty” of this phrase is a central weakness of this statute. (McLaughlin, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR 214-c:2, at 632.) It has been observed that "[i]t is hard to believe that the first onset of symptoms would trigger the statute since this would confer precious little benefit over the old date-of-injury rule in New York. On the other hand, it seems clear that the statute does not envision that the period of limitations will await the plaintiff’s personal dawning of consciousness of each and every element of his cause of action.” (Id., at 633.)
It is plaintiffs’ position that their multiple sclerosis conditions preexisted their RPD employment and that their injury was the activation and aggravation of this asymptomatic, *511 dormant condition into a symptomatic, active condition by exposure to zinc. Plaintiffs contend that they did not know and could not have reasonably known of this injury before July 1, 1986. Indeed, it was only after the publication of a study in the Journal of Neurology in October 1987 that the connection between zinc exposure at RPD and the high incidence of MS among RPD employees was observed and made known. Plaintiffs claim that they did not learn of this information until sometime in 1988 when an article concerning this study appeared in the local newspaper.
The relevant analysis under CPLR 214-c according to plaintiffs is "when did plaintiffs learn, or should they reasonably have learned, that their underlying MS conditions were being aggravated and accelerated atypically by a toxic exposure.” In essence, plaintiffs’ position is that the term injury means actionable injury. That is, a plaintiff must discover not only that he has an illness or disease but he must be aware or have reason to believe that the illness or disease is causally related to toxic substance exposure.
In support of their position, plaintiffs point out that with most usual toxic substance induced illnesses, knowledge of causation is an inherent element in the discovery of the injury. For example, the illness of asbestosis and mesothelioma occur only if there has been an exposure to asbestos. Therefore, once those conditions are diagnosed, it is known that an actionable injury occurred because those conditions could not have come into existence unless there was exposure to asbestos. The condition of multiple sclerosis is different, however, because it may exist in a dormant and asymptomatic state before exposure occurs and the manifestation of multiple sclerosis symptoms can occur absent an exposure to zinc or any other toxic substance. Therefore, plaintiffs had no reason to believe that their illness was atypical or that they had an actionable injury until they learned of the study which causally connected MS symptoms with zinc exposure.
Defendants argue that plaintiffs’ injury is the manifestation of their multiple sclerosis conditions which had previously been asymptomatic and dormant. It is the defendants’ contention that the date of diagnosis of the MS is the date upon which plaintiffs discovered their injury. Since Michael was diagnosed in 1972 and Belmore in 1980, they meet criteria (b), i.e., discovery was prior to July 1, 1986, and section 214-c is inapplicable. Defendants argue that what plaintiffs discovered *512 in 1987 or 1988 was the possible cause of their injury rather than the injury itself.
The rule of construction of statutes is that legislative intent is to be ascertained from the words and language used in the statute, and if the language is unambiguous and the words plain and clear, there is no occasion to resort to other means of interpretation. (McKinney’s Cons Laws of NY, Book 1, Statutes § 92 [b].) Webster’s Dictionary defines injury as: "an act that damages, harms, or hurts: an unjust or undeserved infliction of suffering or harm * * * a violation of another’s rights for which the law allows an action to recover damages * * * hurt, damage, or loss sustained”. (Webster’s Third New International Dictionary 1164 [unabridged 1986].) Black’s Law Dictionary definition of injury is: "[a]ny wrong or damage done to another * * * [p]hysical pain, illness or any impairment of physical condition.” (Black’s Law Dictionary 706 [5th ed 1979].) These definitions support both plaintiffs’ and defendants’ positions. Injury can be just a physical condition itself, as defendants contend, as well as a physical condition inflicted by another, as plaintiffs contend. Since the plain meaning of this term supports both viewpoints, the text of the entire statute as well as the legislative history must be examined.
Section 214-c was passed for the express purpose of remedying the fundamental injustice to victims suffering latent injuries which the last exposure rule wrought. The legislative history and reasons for a liberal interpretation of the statute have been very capably discussed at the Appellate Division level and will not be set forth again herein. (See, e.g., Di Marco v Hudson Val. Blood Servs., 147 AD2d 156, 159-160; Prego v City of New York, 147 AD2d 165, 170-174.) While this court is inclined to liberally construe the statute and adopt plaintiffs’ interpretation and position, it feels constrained from so doing by the inclusion of subdivision (4) in the statute.
Subdivision (4) seems to provide for situations such as the one herein in which an individual has suffered an injury that does not have an obvious or known toxic substance cause. As one commentator has noted, "[subdivision (4) is addressed to situations * * * where fixing the date of discovery of the injury does not tell the whole story because the plaintiff, although he knows he is injured, does not know who or what caused the injury. In such cases this subdivision gives the plaintiff five years after the discovery (actual or constructive) of the injury to ascertain its cause. If he does not (or cannot) discover the etiology within five years, then he is barred by *513 the statute of limitations.” (McLaughlin, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR 214-c:4, at 634.) Plaintiff is also "required to allege and prove that technical, scientific or medical knowledge and information sufficient to ascertain the cause of his injury had not been discovered, identified or determined prior to the expiration of the period within which the action or claim would have been authorized”. (CPLR 214-c [4].) If the term injury encompassed causation, that is, if injury were to be defined as an illness or disease believed or suspected to be caused by toxic substance exposure, then the limitations provisions of subdivision (4) would not be necessary.
A comparison to Federal law in this area lends support to this interpretation. Had the New York Legislature intended a knowledge of causation to be part of the discovery of personal injury, language similar to that contained in the Federal statute could have been adopted and used. In 1980, Congress enacted the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA). (42 USC § 9601 et seq.) CERCLA was amended in 1986 by the Superfund Amendments and Reauthorization Act of 1986 (SARA). (Pub L 99-499.) As part of this amendment, section 9658 was added to title 42 of the United States Code. That section, in relevant part, provides that the Federally required commencement date for actions is "the date the plaintiff knew (or reasonably should have known) that the personal injury or property damage * * * were caused or contributed to by the hazardous substance or pollutant or contaminant concerned.” (42 USC § 9658 [b] [4] [A].) Plaintiffs’ acknowledgment that their cause of action would not be time barred by this Federal provision is an implicit acknowledgement that their discovery in 1987 or 1988 was not of the injury, but of the cause of the injury. The distinction between cause of injury and discovery of injury within section 214-c leads this court to believe that the Legislature deliberately sought to exclude knowledge of toxic substance exposure causation as an element of injury.
Plaintiffs attempt to analogize their situation to that present in Fusaro v Porter-Hayden Co. (145 Misc 2d 911). In Fusaro, the plaintiff had commenced a lawsuit during the window period (July 30, 1986-July 30, 1987) afforded by the Toxic Tort Revival Statute (L 1986, ch 682, §4) to recover damages for his asbestosis condition. In November 1987, plaintiff was diagnosed as suffering from peritoneal mesothelioma, also an asbestos related condition. At issue was whether *514 plaintiff was time barred from amending his complaint to assert a cause of action for damages related to the mesothelioma. In holding that plaintiff’s action was not time barred, the court found that asbestosis and mesothelioma were two distinct illnesses each with its own course, symptoms and consequences. It is noted that "the word 'injury’ in * * * [214-c (6)] (b) should be equated with physical manifestation of the particular disease for which compensation is sought (see, Jackson v Johns-Manville Sales Corp., 727 F2d 506 [5th Cir 1984], cert denied 478 US 1022 [1986]).” (Fusaro v Porter-Hayden Co., supra, at 915.) This position has support at the Federal level where it has been stated that the "time to commence litigation does not run on a separate and distinct disease until that disease becomes manifest.” (Wilson v JohnsManville Sales Corp., 684 F2d 111, 112; see, Eagle-Picher Indus. v Cox, 481 So 2d 517; Mauro v Raymark Indus., 116 NJ 126, 561 A2d 257.) The operative phrase in these decisions is "separate and distinct disease”. Plaintiffs’ attempt to equate their diagnosis of MS in 1972 and 1980 and subsequent discovery in 1987 and 1988 of its possible aggravation and acceleration by zinc exposure to the discovery of two separate and distinct illnesses found in Fusaro does not pass muster. Plaintiffs’ discovery that the MS which had manifested itself in 1972 and 1980 was caused to manifest or to be accelerated or aggravated by zinc exposure is not a separate and distinct disease such that a new limitations period is triggered.
Section 214-c does not allow for the revival of a claim when the injury is discovered prior to July 1, 1986 but the toxic causation is not discovered until after that date or more than five years after the date of discovery. It was recognized at the time of passage of the statute that certain claims would gain new life and that certain other possibly meritorious actions would be excluded. (McLaughlin, Practice Commentaries, McKinney’s Cons Law of NY, Book 7B, CPLR 214-c:6, at 637; Bill Jacket, L 1986, ch 682.) It is unfortunate that plaintiffs are among those so excluded.
[Portions of opinion omitted for purposes of publication.]

. The first amended complaints, upon which the plaintiffs’ motions were brought, also contained a cause of action for breach of warranty. Plaintiffs cross-moved to serve a second amended complaint which, among other changes, eliminated the breach of warranty claim. Defendants agreed to the amendment without prejudice to their right to move against the second amended complaint. By so doing, that portion of defendants’ motion seeking dismissal of plaintiffs’ breach of warranty cause of action is moot.

. [1] The introduction of plaintiffs’ medical records by defendants in support of their motions is extrinsic evidence. As plaintiffs correctly pointed out and anticipated in their answering papers, the defendants’ introduction of extrinsic evidence requires the motion to be considered as one for summary judgment (CPLR 3212) rather than for dismissal (CPLR 3211 [c]). (See, Wahl v Wahl, 122 AD2d 564.) Accordingly, this application is converted to a motion for summary judgment and the court is guided by the attendant standard of review. (See, Robinson v Strong Mem. Hosp., 98 AD2d 976.)