**Dorothy J. KOWALSKI and
Louis Kowalski, Jr., her
spouse, Plaintiffs,**

v.

**The GOODYEAR TIRE & RUBBER
COMPANY, Defendant.**

No. 92–CV–380C.

United States District Court,
W.D. New York.

Jan. 4, 1994.

Steven H. Wodka, Little Silver, NJ, and John N. Lipsitz, Buffalo, NY, for plaintiffs.

Volgenau & Bosse (Diane F. Bosse, of counsel), Buffalo, NY, for defendant.

## BACKGROUND

CURTIN, District Judge.

Plaintiffs Dorothy J. and Louis Kowalski, Jr., bring this action in negligence and strict liability against defendant Goodyear Tire & Rubber Company ("Goodyear"). The Kowalskis allege that Goodyear failed to prevent the release of ortho-toluidine, an abnormally dangerous hazard, from its Niagara Falls plant, contaminating the plaintiffs and causing Mrs. Kowalski to contract bladder cancer. The release occurred when Mr. Kowalski, a long-term employee of the defendant, left the plant each day. Although he showered and changed out of his work clothes, the configuration of the shower and locker facilities permitted the chemical to recontaminate his hair, skin, and street clothes.

Mrs. Kowalski allegedly became ill with cancer as a result of 25 years of exposure to ortho-toluidine through the handling of her husband's clothing and the spread of the chemical throughout their house. The 20–

year latency period is consistent with the latency period for occupational bladder carcinogens. Plaintiffs assert that Goodyear knew that the chemical could cause bladder cancer, yet failed to inform its work force of the potential effects of exposure to ortho-toluidine to themselves and their families, even after Goodyear learned that several employees had in fact contracted the disease.

Plaintiffs seek recovery in strict liability for the release of an abnormally hazardous substance into the environment, for personal injury and loss of consortium which resulted from defendant's negligent actions, and for punitive damages.

Goodyear moves for summary judgment on three grounds. First, it contends that the statute of limitations bars this action. Secondly, Goodyear asks that summary judgment be granted on the strict liability claim because plaintiffs have failed to define the abnormally dangerous activity of the defendant. Finally, it asserts that plaintiffs have failed to state a claim of negligence for which relief may be granted because they have not alleged as a necessary element the duty which Goodyear owed to Mrs. Kowalski.

## DISCUSSION

### I. Standard for Summary Judgment

Summary judgment may be granted if the pleadings, depositions, and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). All ambiguities are resolved in favor of the non-moving party. *Rosen v. Thornburgh*, 928 F.2d 528, 533 (2d Cir.1991).

### II. Statute of Limitations

#### A. Effect of State Statute

The parties do not dispute that plaintiffs' claim is time-barred if they are forced to rely on the New York statute of limitations for personal injury tort. N.Y.Civ.Prac.L. & R. 214–c(2) (McKinney 1990) states that:

> [The accrual date for] an action to recover damages for personal injury ... caused by the latent effects of exposure to any substance ... [is] the date of discovery of the injury by the plaintiff or ... the date when through the exercise of reasonable diligence such injury should have been discovered by the plaintiff, whichever is earlier.

Section 214–c(4) extends the statutory limitation for situations in which the prospective plaintiff discovers the injury but cannot identify its cause. Subsection 4 provides for five years to discover the cause of illness, and one additional year to commence the action if the plaintiff can "demonstrate that the state of medical or scientific knowledge was such that causation of his injury could not have been identified within the three-year period...." McLaughlin, Practice Commentaries, 7B McKinney 214–c(4).

Mrs. Kowalski was diagnosed with bladder cancer on February 1, 1984. According to New York law, the injury is discovered for limitations purposes when it is diagnosed. *Michael v. Ametelco, Inc.*, 150 Misc.2d 507, 568 N.Y.S.2d 1003, *aff'd*, 175 A.D.2d 667, 573 N.Y.S.2d 945, *appeal denied*, 78 N.Y.2d 862, 578 N.Y.S.2d 877, 586 N.E.2d 60 (1991). The commencement of the suit in June 1992 makes it untimely even with the application of the § 214–c(4) discovery extension.

#### B. Federal Commencement Date Preemption

The Kowalskis argue that their action is governed by the federally required commencement date preemption of the state statute of limitations pursuant to 42 U.S.C. § 9658, in the Superfund Amendments and Reauthorization Act of 1986 ("SARA") amendment to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"). 42 U.S.C. §§ 9601–62 (1993). They claim that Congress passed this amendment expressly to circumvent the dilemma faced by prospective plaintiffs exposed to toxic substances whose actions were

barred even before they knew of the cause of their injury.[1]

■ The federally required commencement date delays the running of the state statute of limitations until "the date the plaintiff knew (or reasonably should have known) that the personal injury or property damages ... were caused or contributed to by the hazardous substance or pollutant or contaminant concerned." 42 U.S.C. § 9658(b)(4)(A). It "effectively creates a federally mandated discovery rule for the accrual of state law claims involving releases of hazardous substances that cause or contribute to personal injury...." *Soo Line Ry. Co. v. B.J. Carney & Co.*, 797 F.Supp. 1472, 1487 (D.Minn.1992). The Kowalskis claim that this mandated delay tolled the statute of limitations for their suit until April 23, 1992, when they first learned of the possible causal relationship between Mrs. Kowalski's bladder cancer and her husband's work at Goodyear. L. Kowalski Aff. ¶ 11.

Goodyear counters that CERCLA's § 9658 only applies to causes of action for personal injuries under state law when there is an underlying CERCLA action. "The discovery statute of limitations added to CERCLA in the SARA amendments is limited to personal injury or property damage causes of action under state law in situations where there is an underlying CERCLA action providing for cleanup and remedial activities." *Knox v. AC & S, Inc.*, 690 F.Supp. 752, 757 (N.D.Ind. 1988).

When CERCLA was enacted in 1980, the legislation included a mandate to the President to conduct a study and submit the findings to Congress "to determine the adequacy of existing common law and statutory remedies in providing legal redress for harm to man and the environment caused by the release of hazardous substances into the environment...." 42 U.S.C. § 9651(e)(1) (1983). Subsection (4) of the same section required the study group to issue a report explicitly addressing:

(A) the need for revisions in existing statutory or common law, and

(B) whether such revisions should take the form of Federal statute or the development of a model code which is recommended for adoption by the States.

As a result of the study group's recommendations, Congress passed the Superfund Amendments and Reauthorization Act (SARA) in 1986. Pub.L. 99–499 (1986). Title II, § 203 of SARA, which became § 9658 of CERCLA, addresses the problem of the inadequate time limits for filing state actions for personal injury and property damage caused by the release of hazardous substances, pollutants, or contaminants. There is nothing in the language of the section that requires an underlying CERCLA action in order to apply the federally required commencement date preemption of the state statute of limitations. The Congressional reports accompanying and explaining the legislation also makes no reference to an underlying CERCLA action.[2] *See* H.R.Rep. No. 253(I), 99th Cong.2d Sess. at 257, 285, *reprinted in* 1986 U.S.C.C.A.N. 2835, 2960.

■ Defendant cannot point to any other section of CERCLA which makes an underlying action a requirement. Rather, it ar-

---

**1.** Plaintiffs also maintain that the principle of equitable estoppel should bar Goodyear from asserting a statute of limitations defense. Since the court finds that the statute of limitations did not begin to run on their claim until the federally required commencement date mandated by CERCLA, the issue of equitable estoppel does not have to be reached.

**2.** The new section was not contained in the original Senate version of SARA, but was included in the joint bill which became law. The House Conference Report explained the need for liberalization of state statutes of limitations as follows:
This section addresses the problem identified in the 301(e) study. While State law is generally applicable regarding actions brought under State law for personal injury, or property damage, which are caused or contributed to by exposure to any hazardous substances, or pollutant or contaminant, released into the environment from a facility, a Federally-required commencement date for the running of State statutes of limitations is established. This date is the date the plaintiff knew, or reasonably should have known, that the personal injury referred to above was caused or contributed to by the hazardous substance or pollutant or contaminant concerned.
H.R.Conf.Rep. No. 962, 132 Cong.Rec. H9032–04 (1986).

gues that a "whole statute" construction principle and common sense dictate that § 9658 only applies when underlying CERCLA actions are present. Goodyear correctly states that the primary goals of CERCLA are to enable the EPA to respond effectively and expeditiously to toxic spills and hold those parties responsible for the releases liable for the costs of the cleanup. *B.F. Goodrich Co. v. Murtha,* 958 F.2d 1192, 1198 (2d Cir.1992). However, careful reading of both CERCLA and the SARA amendments shows that these are not the only goals, as evidenced by the mandate of § 9651(e) discussed above. Indeed, the provision in SARA which follows § 9658 is the section authorizing citizen actions for alleged violations "of any standard, regulation, condition, requirement, or order which has become effective pursuant to this chapter...." 42 U.S.C. § 9659(a)(1). Such a provision would make no sense if it was dependent on an underlying CERCLA action.

As plaintiffs assert, CERCLA provides a wide range of remedial action to cope with the problems of environmental waste. It is not limited to authorizing the federal government to file an action. The plain reading of § 9658 in the context of the mandate which resulted in the SARA amendments suggests that the preemption of a state statute of limitations was passed as an additional remedy, not one confined to actual CERCLA actions.

Goodyear next argues that the federal statute only preempts the state accrual date where there is a "release," as defined, of a hazardous substance, pollutant, or contaminant, into the "environment" as defined. In this case, the manner of alleged release is the carrying-out of the substance from the plant upon the clothes and person of the plaintiff-husband, and the environment is the home and automobile of the plaintiffs, which Goodyear claims is not the "environment" contemplated by CERCLA. Item 7 at 3–4. The defendant has not offered any specific case law to support this interpretation, but seeks its bar through an analysis of the language of the statute itself.

■ Plaintiffs counter that such a narrow interpretation would violate the broad, reme-

dial purpose of the statute. They cite *State of Vermont v. Staco, Inc.,* 684 F.Supp. 822, 834 (D.Vt.1988), which found that carrying home hazardous substances on clothing constitutes a "release into the environment" for the purposes of CERCLA analysis. This court agrees that the remedial purposes of the statute and the language concerning the release of chemicals into the environment can be read to include hazardous chemicals carried out of the workplace on employees' person and clothing which have the potential of causing injuries to those who come in contact with such employees.

■ In this case, the federally required commencement date, applied pursuant to CERCLA § 9658, is the date at which Mrs. Kowalski knew or reasonably should have known that her cancer was caused by the ortho-toluidine released onto her husband's clothing as he left the plant each day. Plaintiffs allege that they had no knowledge that ortho-toluidine could cause bladder cancer until Mr. Kowalski received a letter in June 1990 from the National Institute for Occupational Safety and Health reporting the result of a study done with the men employed in Department 245 of Goodyear's Niagara Falls plant, from which Mr. Kowalski retired in 1987. Item 10, Tab 1 at ¶ 8. They were unaware of the causal connection between the ortho-toluidine release at the plant and Mrs. Kowalski's illness prior to April 23, 1992. *Id.* at ¶ 11. Their suit was filed in June 1992, well within N.Y.C.P.L.R. § 214–c three-year limitation period. Plaintiffs' claims are not barred by the statute of limitations.

### III. Strict Liability Claim

■ Engaging in an activity which is abnormally dangerous subjects the actor to strict liability for harm caused to his neighbors resulting from the abnormally dangerous character of the activity, even though the actor has exercised the utmost care and has acted without negligence. *Restatement (Second) of Torts,* § 519. The threshold issue of whether an activity is so abnormally dangerous that the actor may be held strictly liable for the harm is a question for the court and thus appropriate for summary judgment.

*Restatement, Torts 2d,* § 520 Comment 1; *U.S. v. Hooker Chemicals and Plastics Corp.,* 722 F.Supp. 960 (W.D.N.Y.1989).

In their complaint, plaintiffs claim that the escape of the hazardous substance ortho-toluidine from Goodyear's Niagara Falls plant was the direct and proximate cause of Mrs. Kowalski's cancer. Goodyear argues that these allegations, even when accepted as true for purposes of a summary judgment motion, fail to establish a basis for imposing strict liability. The mere use of toxic chemicals in a plant with a risk of secondary exposure has never been held to constitute an abnormally dangerous activity. Item 8 at 16.

■ In the absence of controlling case law, New York courts use six factors iterated by the Restatement of Torts 2d, § 520, as a guideline to determine whether an activity is abnormally dangerous. *See Doundoulakis v. Town of Hempstead,* 42 N.Y.2d 440, 448, 398 N.Y.S.2d 401, 368 N.E.2d 24 (1977). These factors are:

> (a) existence of a high degree of risk of some harm to the person, land or chattels of others; (b) likelihood that the harm that results from it will be great; (c) inability to eliminate the risk by the exercise of reasonable care; (d) extent to which the activity is not a matter of common usage; (e) inappropriateness of the activity to the place where it is carried on; and (f) extent to which its value to the community is outweighed by its dangerous attributes.

*Restatement 2d, Torts,* § 520, Comment f, explains how to apply these factors:

> [T]he factors ... are all to be considered, and are all of importance. Any one of them is not necessarily sufficient of itself in a particular case, and ordinarily several of them will be required for strict liability. On the other hand, it is not necessary that each of them be present, especially if others weigh heavily.

Regarding the allegations of the non-moving party in their most favorable light for purposes of summary judgment, only factor (b) is clearly present. Ortho-toluidine is a known carcinogen which can penetrate the body and cause injury through the skin.

Bladder cancer is an often fatal disease, and therefore there is a likelihood of great harm.

■ The court is unable at this early stage of the proceedings to determine the application of the other five factors. If Mrs. Kowalski was able to contract the disease from her husband's clothing, it would imply some degree of risk to all people who habitually entered that part of the plant as well as those intimately connected with the plant's habitues. However, it is almost impossible to deduce from the pleadings that the company was unable to eliminate the risk by exercising reasonable care. Indeed, plaintiffs allege that Goodyear's failure to provide in-house laundering, adequate showers, and locker facilities in an uncontaminated area caused ortho-toluidine to be released from the plant. Item 1, ¶ 3. Plaintiffs argue that Goodyear admitted to releasing thousands of pounds of the chemical into the air, sewer system, and other off-plant sites as recently as 1989 (Items 9 at 19, 10 at Tab 16), but this release did not contribute to Mrs. Kowalski's disease, nor is evidence presented that there was any risk associated with this form of release. In order to find that the use of this chemical was "common," "appropriate" to this setting, and/or of such value to the community that "its dangerous attributes" would be outweighed, the court must weigh more substantial evidence than the parties have as yet proffered. Therefore, defendant's motion for summary judgment on this claim is denied at this stage.

*IV. Negligence and Duty of Care*

■ To recover under a theory of negligence for the tort of personal injury, the plaintiffs must show that the defendant owed them a duty of care. *Eiseman v. State of New York,* 70 N.Y.2d 175, 518 N.Y.S.2d 608, 511 N.E.2d 1128 (1987). Goodyear argues that Dorothy Kowalski has failed to show any legal duty she was owed by the defendant. Therefore, her claim must fail as a matter of law.

Plaintiffs assert that they have alleged the facts out of which the defendant's legal duty arises. "It is not necessary to do more than prove the facts out of which the duty springs, for where the facts are established the law

will fix the duty." 79 N.Y.Jur.2d Negligence, § 14 at 328 (1989). Plaintiffs allege that Goodyear knew that exposure to ortho-toluidine through clothing, skin, and hair increased the risk of bladder cancer. They have submitted evidence pursuant to this motion and in answers to defendant's interrogatories showing that Goodyear knew or should have known at all times relevant to this claim that persons like Dorothy Kowalski, who suffer secondary exposure to the chemical, were within the "zone of danger" for the harmful effects of this substance. Items 9 at 21–24; 10 at Tabs 3 & 4. Plaintiffs claim that despite this knowledge, Goodyear permitted the chemical to escape the plant, exposing its workers and their families to its harmful effects without warning them of the dangers. Since Dorothy Kowalski was a foreseeable plaintiff, the Kowalskis assert that a duty was owed to her to minimize the risk of harm, which Goodyear negligently failed to do. "The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension." *Palsgraf v. Long Island R.R.*, 248 N.Y. 339, 344, 162 N.E. 99 (1928).

Defendant first argues that plaintiffs cannot use foreseeability to infer a duty; rather, foreseeability will define the scope of the duty, once that duty has been determined. *See Pulka v. Edelman*, 40 N.Y.2d 781, 390 N.Y.S.2d 393, 358 N.E.2d 1019 (1976). Goodyear concedes that the employment relationship between itself and Mr. Kowalski, its employee, created a duty to warn and protect against unnecessary, harmful exposure. It contends, however, that no relationship with Mrs. Kowalski extended that duty to her.

In support of its argument, Goodyear cites *Strauss v. Belle Realty Co.*, 65 N.Y.2d 399, 492 N.Y.S.2d 555, 482 N.E.2d 34 (1985). In that case the defendant, an electric company, was found not liable for injuries incurred during a power outage by a tenant whose landlord had contracted for electrical service. The court determined that the defendant had no duty to the tenant because such a duty would have implied control over third parties who actually caused the harm. The court stated that:

[W]hile the absence of privity does not foreclose recognition of a duty, it is still the responsibility of courts, in fixing the orbit of duty "to limit the legal consequences of wrongs to a controllable degree."... The courts' definition of an orbit of duty based on public policy may at times result in the exclusion of some who might otherwise have recovered for losses or injuries if traditional tort principles had been applied.

*Id.* at 403, 492 N.Y.S.2d 555, 482 N.E.2d 34. *See also Pulka,* 40 N.Y.2d 781, 390 N.Y.S.2d 393, 358 N.E.2d 1019 (Garage owner found to have no duty to pedestrian who was injured when hit by a car exiting from his garage because finding such a duty would imply that the owner had a duty to control the drivers of the cars in his garage).

The rule set out in *Pulka* that a duty must be found before determining its scope through foreseeability is still good law in New York. However, the Court of Appeals has also continued to follow the more dialectical approach to duty and foreseeability that the plaintiffs cite from *Palsgraf.* In *Havas v. Victory Paper Stock Co., Inc.,* 49 N.Y.2d 381, 426 N.Y.S.2d 233, 402 N.E.2d 1136 (1980), Judge Fuchsberg reiterated that a determination of whether a defendant owes a duty to a plaintiff turns largely on foreseeability. He explained that:

[I]n a case which raises ... traditional negligence law queries ... the answers are still to be found in the principle so pungently phrased by Cardozo that "[t]he risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation." Or, as it is spelled out more precisely in the English case that is the progenitor of the foreseeability principle, "[W]henever one person is by circumstances placed in such a position with regard to another that every one of ordinary sense who did think would at once recognize that if he did not use ordinary care and skill in his own conduct with regard to the circumstances he would cause danger of injury to the person or property of the other, a duty arises to use ordinary care and skill to avoid such danger."

*Id.* at 385–86, 426 N.Y.S.2d 233, 402 N.E.2d 1136, *citing Palsgraf,* 248 N.Y. at 344, 162 N.E. 99; and *Heaven v. Prender,* 11 QBD 503, 509, Britt, MR (1883).

In looking at "the risk reasonably to be perceived" in order to find duty in the instant case, the court finds that the plaintiffs have alleged Goodyear's control over a known dangerous substance, the chemical ortho-toluidine. The defendant's control carries with it a duty of ordinary care to protect persons and property within the scope of the danger. This duty is the same as that found by Judge Friendly in *Petition of Kinsman Transit Co. (Kinsman I),* 338 F.2d 708 (2d. Cir.1964). In *Kinsman I,* the defendant shipowner controlled a ship which, when "insecurely moored in a fast-flowing river is a known danger.... The shipowner ... owed a duty of care to all within the reach of the ship's known destructive power." *Id.* at 722. Similarly, in this case, Goodyear owed a duty of care to all within the reach of the chemical's "known destructive power."

Goodyear next argues that even if the court finds a duty to protect against known danger, prior case law has established that it is not foreseeable that the wife who suffers secondary exposure to a carcinogenic chemical through the handling and laundering of her husband's work clothes is at risk of cancer. In *Rohrbaugh v. Owens–Corning Fiberglas Corp.,* 965 F.2d 844 (10th Cir.1992), the decedent-plaintiff contracted mesothelioma from exposure to asbestos from laundering her husband's work clothes. Asbestos was known by the defendant to be carcinogenic at the relevant time, but the Tenth Circuit found that the plaintiff offered no evidence that the defendant corporation knew or should have known that she was at risk simply through secondary exposure.

In contrast to *Rohrbaugh,* plaintiffs in this case have provided evidence that by 1954 Goodyear perceived the danger of third-party exposure to ortho-toluidine from clothes, shoes, or gloves on which the chemical had spilled. Items 9 at 22, 10 at Tab 3. They have produced industry publications which warn against allowing employees to bring home their work clothes or to carry the contamination from the dirty change room to the showers. Item 10 at Tab 3. In short, plaintiffs have stated a claim and detailed Goodyear's duty based on the foreseeability of the harmful effects of secondary exposure with sufficient particularity to survive a motion for summary judgment.

### CONCLUSION

Plaintiffs' claim is not barred by the New York statute of limitations for personal injury because the federally required commencement date mandated by CERCLA § 9658 applies to this claim. Plaintiffs have also supported their allegations of negligence, including the element of duty which Goodyear owed to Mrs. Kowalski. Therefore, defendant's motion for summary judgment is denied at this time.

Defendant's motion under Fed.R.Civ.P. 12(b) to dismiss the strict liability action for injury from release of an abnormally dangerous substance is also denied.

A telephone conference shall be held on January 24, 1994, at 8:45 a.m. Buffalo counsel shall attend in chambers.

So ordered.