[786 NYS2d 26]

In the Matter of NEW YORK CITY ASBESTOS LITIGATION.

ELIZABETH HOLDAMPF et al., Appellants, v A.C. & S., INC., et al., Defendants, and PORT AUTHORITY OF NEW YORK AND NEW JERSEY, Respondent.

First Department, December 2, 2004

[redacted]

**APPEARANCES OF COUNSEL**

*Weitz & Luxenberg, P.C.*, New York City (*Erik Jacobs* and *Stephen J. Riegel* of counsel), for appellants.

*McGivney, Kluger & Gannon, P.C.*, New York City (*Dwight A. Kern* of counsel), for respondent.

**OPINION OF THE COURT**

GONZALEZ, J.

This appeal involves the question of whether defendant owed a duty of care to a specific plaintiff who claims to have suffered foreseeable injuries as a result of defendant's negligent acts or omissions. Specifically, we must decide whether defendant Port Authority may be liable to plaintiff wife for serious injuries allegedly resulting from her second-hand exposure to asbestos while laundering her husband's asbestos-contaminated work clothes during the 30-year period he was employed by the Port Authority.

Applying well-established principles of common-law negligence, we conclude that Supreme Court erred in holding that the Port Authority owed no duty of care to the wife as a matter of law on the ground that an employer's duty to provide employees with a safe workplace did not extend to nonemployees exposed to asbestos off premises. Accordingly, we modify the order and reinstate plaintiffs' first cause of action in common-law negligence.

Plaintiff husband John Holdampf worked for the Port Authority as a mechanic from 1960 to 1996. During that time, he was assigned to several different work sites, including the World Trade Center, the Holland and Lincoln Tunnels, LaGuardia, JFK and Newark Airports, the Port Authority Bus Terminal and the Journal Square Terminal in New Jersey. Plaintiffs allege that the husband was exposed to asbestos products at each of these work sites while working with tiles, gaskets, brakes, pipes and other items containing asbestos. The Port Authority provided laundry services at each of the above facilities for its employees' work clothes, but the husband usually wore his uniforms home as a matter of convenience and because there were no showers at work. Plaintiff wife alleges that she was repeatedly exposed to asbestos while laundering her husband's

asbestos-contaminated work clothes over the course of 30 years. In 2001, the wife was diagnosed with mesothelioma, a fatal cancer, that is known to be caused by exposure to asbestos dust.

The first cause of action in plaintiffs' second amended complaint alleges, inter alia, that the Port Authority was negligent in failing to warn its employees and "other persons who were reasonably and foreseeably known to come into contact with the asbestos-containing products" against the dangers associated with exposure to asbestos. Plaintiffs further allege a breach of the above duties and that said breach proximately caused the wife's injuries. After issue was joined, both plaintiffs were deposed in 2002 and some discovery was exchanged. The record does not disclose whether any present or former Port Authority employees were deposed prior to the instant motion.

In December 2002, the Port Authority moved for summary judgment arguing that no liability may attach since the wife's exposure to asbestos was not connected to her own employment at any Port Authority site. It asserted that "[t]he common law and statutory duty to provide employees with a safe work place is not extended to encompass individuals who are neither employees nor employed at the work site," citing *Widera v Ettco Wire & Cable Corp.* (204 AD2d 306 [1994], *lv denied* 85 NY2d 804 [1995]) and *Stanley v A.C. & S., Inc.* (Index No. 104652 [Sup Ct, NY County, Nov. 22, 2002]).

In opposition, plaintiffs argued that the Port Authority may be held liable for the wife's injuries since it negligently permitted a dangerous substance such as asbestos to escape from its work sites. They further argued that case law has recognized that landowners may be liable for foreseeable injuries to third parties caused by the negligent discharge of dangerous substances from their property. Plaintiffs also submitted internal Port Authority documents from 1969-1970, relating to the construction of the World Trade Center, which evidence discussions among Port Authority personnel concerning the potential safety hazards of airborne asbestos to the surrounding community and possible protective measures to eliminate or reduce the hazard. Plaintiffs argue that these documents show that the Port Authority had "actual knowledge" of the dangers "to people exposed to asbestos as bystanders."

Supreme Court, in a one-sentence short form order dated January 16, 2003, granted the Port Authority's motion for summary judgment "based on [the] *Widera* case and absence of duty to plaintiffs."

On appeal, plaintiffs argue that Supreme Court erred in holding that the Port Authority owed no duty to the wife as a matter of law, solely on the basis that she was not exposed to asbestos while employed at a Port Authority work site. Plaintiffs further assert that established common-law negligence principles support the imposition of a duty of care on the Port Authority to prevent harmful contaminants from escaping its premises and causing foreseeable injuries to third parties. We agree.

A defendant may be held liable for negligence only when it breaches a duty of care owed to the plaintiff (*see Sanchez v State of New York*, 99 NY2d 247, 252 [2002]; *Strauss v Belle Realty Co.*, 65 NY2d 399, 402 [1985]; *Pulka v Edelman*, 40 NY2d 781, 782 [1976]). In the absence of a duty running to the injured person, there can be no liability in damages, no matter how careless the conduct nor foreseeable the harm (*see Lauer v City of New York*, 95 NY2d 95, 100 [2000]; *Pulka v Edelman*, 40 NY2d at 785).

The existence and scope of an alleged tortfeasor's duty is, in the first instance, a legal question for determination by the courts (*see Di Ponzio v Riordan*, 89 NY2d 578, 583 [1997]). In this analysis, "not only logic and science, but policy play an important role" (*De Angelis v Lutheran Med. Ctr.*, 58 NY2d 1053, 1055 [1983]), and courts are "also bound to consider the larger social consequences of our decisions and to tailor our notion of duty so that 'the legal consequences of wrongs [are limited] to a controllable degree' " (*Waters v New York City Hous. Auth.*, 69 NY2d 225, 229 [1987], quoting *Tobin v Grossman*, 24 NY2d 609, 619 [1969]).

In determining the scope of a defendant's duty in a particular case, courts have traditionally looked at factors such as "whether the relationship of the parties is such as to give rise to a duty of care (*see, e.g., Waters v New York City Hous. Auth.*, 69 NY2d 225; *Pulka v Edelman, supra*, at 783), whether the plaintiff was within the zone of foreseeable harm (*see, e.g., Palsgraf v Long Is. R.R. Co.*, [248 NY 339, 344]) and whether the accident was within the reasonably foreseeable risks (*see, e.g., Danielenko v Kinney Rent A Car*, 57 NY2d 198)" (*Di Ponzio v Riordan*, 89 NY2d at 583). Moreover, while it is true that foreseeability of an injury does not alone determine the existence of a duty (*see Eiseman v State of New York*, 70 NY2d 175, 187 [1987]; *Pulka v Edelman*, 40 NY2d at 785), the foreseeability of harm to a specific plaintiff is unquestionably an

important factor in making this determination (see *Sanchez v State of New York*, 99 NY2d at 253; *Di Ponzio v Riordan*, 89 NY2d at 583 ["(f)oreseeability of risk is an essential element of a fault-based negligence cause of action because the community deems a person at fault only when the injury-producing occurrence is one that could have been anticipated"]).

Ultimately, the Court of Appeals has declared that "[r]egardless of the status of the plaintiff, the scope of the duty owed by the defendant is defined by the risk of harm reasonably to be perceived" (*Sanchez*, 99 NY2d at 252, citing *Basso v Miller*, 40 NY2d 233, 241 [1976]), or, as Chief Judge Cardozo stated: "[t]he risk reasonably to be perceived defines the duty to be obeyed" (*Palsgraf*, 248 NY at 344).

With these principles in mind, we turn to the parties' submissions on the motion for summary judgment. As the proponent of a motion for summary judgment, the Port Authority was required to " 'make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact' " (*Ayotte v Gervasio*, 81 NY2d 1062, 1063 [1993], quoting *Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). Failure to make such a showing requires denial of the motion, regardless of the sufficiency of the opposing papers (see *Ayotte v Gervasio*, 81 NY2d at 1063; *Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]).

In this case, the Port Authority based its application for summary relief almost exclusively on the *Widera* rationale that an employer owes no duty of care to nonemployees outside the workplace. It submitted a brief affidavit of its counsel making this argument and appended the wife's deposition testimony. No supporting affidavits were submitted addressing plaintiffs' allegations that the asbestos used at Port Authority facilities posed a risk of harm to employees and others who might foreseeably come into contact with it, or their allegations that the defendant knew or should have known of the dangers of secondary exposure. Essentially, the Port Authority rested its entire motion on the *Widera* decision and its application to the circumstances of this case.[1]

We conclude that the *Widera* decision is not controlling here and does not mandate judgment in the Port Authority's favor.

---

1. The Port Authority also argued that plaintiffs had failed to adduce evidence showing that the wife was exposed to asbestos during her employment at LaGuardia Airport. This theory of liability is not at issue on this appeal.

In *Widera* (204 AD2d at 306), an infant plaintiff was exposed to toxic chemicals while in utero as a result of the pregnant mother's washing the father's work clothes that had become contaminated at his place of employment. Affirming the dismissal of the common-law negligence claim, the Second Department held that an employer's duty to provide employees with a safe workplace "has not been extended to encompass individuals . . . who are neither 'employees' nor 'employed' at the worksite" (*Widera*, 204 AD2d at 307). The *Widera* court also expressed its concern that the recognition of a duty of care in such circumstances could lead to unlimited liability and "expand traditional tort concepts beyond manageable bounds" (*id.*).

*Widera* is distinguishable from the instant case because it involved the unique question of a tortfeasor's liability to an infant for injuries occurring while in utero. This added wrinkle altered the duty analysis in a fundamental way since the *Widera* court was required to determine whether a defendant owed a duty of care to a plaintiff who was not even born at the time of its negligent conduct. While current precedent permits surviving infants to recover for injuries occurring while in utero (*see Woods v Lancet*, 303 NY 349, 357 [1951]), the *Widera* court clearly was concerned about the potential extension of a duty to a limitless class of plaintiffs, born or unborn, in determining that no duty existed in that case (*Widera* at 307 ["(n)or does our research reveal a reported case from any jurisdiction where an employer's duty has been interpreted to extend to a person, such as the infant plaintiff, who is injured in the manner alleged herein"]). Because *Widera* considered the duty question in the context of liability for injuries occurring in utero, and that issue is not present in this case, *Widera* does not control the outcome here.

Moreover, to the extent that the *Widera* decision may be read to preclude an employer's liability to *any* nonemployees for injuries resulting from dangerous substances escaping from its premises, we cannot subscribe to such a narrow view of common-law negligence principles. In *Baker v R.T. Vanderbilt Co., Inc.* (260 AD2d 750, 750-751 [1999]), a group of mine operators was sued by over 100 employees, former employees and a small number of nonemployees who lived near the mines and who suffered personal injuries allegedly due to the inhalation of asbestos dust released from the defendants' mines. The motion court denied the defendants' motions for summary judgment, and the defendants based their appellate argument on the

*Widera* rationale that an employer owes no duty of care to non-employees for injuries occurring off premises (*id.* at 752). The Third Department affirmed the denial of summary judgment, noting that landowners may be subject to liability for the negligent discharge of dangerous substances which injure third parties (*id.*; *see also* Prosser and Keeton, Torts § 57, at 387 [5th ed] ["(t)he possessor of land is first of all required to exercise reasonable care, with regard to any activities which he carries on, for the protection of those outside of his premises"]; Restatement [Second] of Torts § 371; 85 NY Jur 2d, Premises Liability § 301, at 700-701).

In addition, there are decisions from the federal courts and other state appellate courts which hold that a landowner-employer owes a duty of care to persons off premises in circumstances similar to those here. For example, in *Kowalski v Goodyear Tire & Rubber Co.* (841 F Supp 104 [WD NY 1994]), a Goodyear employee and his wife sued Goodyear in negligence and strict liability for the wife's bladder cancer allegedly caused by her exposure to a toxic chemical used at the defendant's plant and brought home via the husband's person and work clothing. Rejecting Goodyear's argument that it owed the wife no duty of care, the *Kowalski* court (841 F Supp at 109-111), relying on the Court of Appeals' decisions in *Palsgraf* and *Havas v Victory Paper Stock Co., Inc.* (49 NY2d 381, 385-386 [1980]), held that the defendant's control over a dangerous chemical "carries with it a duty of ordinary care to protect persons and property within the scope of the danger." (841 F Supp at 111.) The court further rejected Goodyear's argument that the wife's injuries caused by secondary exposure were not foreseeable, concluding that the plaintiff had adduced sufficient evidence that Goodyear was aware of the danger of secondary exposure to survive a motion for summary judgment (*Kowalski, supra* at 111).

Appellate courts in Texas and Maryland have also held that manufacturers or suppliers of asbestos products may be liable to third parties injured as a result of household exposure to asbestos where the defendants knew or should have known of the reasonably foreseeable risk of secondary exposure to members of the user's household (*see Fuller-Austin Insulation Co., Inc. v Bilder*, 960 SW2d 914, 919-920 [Tex Ct App 1998] [insulation supplier owed duty to stepdaughter of insulation installer who was exposed to asbestos brought home on stepfather's work clothes]; *Anchor Packing Co. v Grimshaw*,

115 Md App 134, 692 A2d 5 [Ct Spec App 1997], *vacated in part on other grounds sub nom. Porter Hayden Co. v Bullinger*, 350 Md 452, 713 A2d 962 [1998] [risk of plaintiff's household exposure to manufacturer's asbestos product was not unforeseeable as a matter of law]).

Although the Port Authority was not a manufacturer or supplier of asbestos products, but rather permitted their use at its work sites, the core of the analysis is the same in determining the scope of the duty owed to third parties—did the defendants know or have reason to know that their use or sale of a product posed a reasonably foreseeable risk of harm to the injured plaintiffs (*see Palsgraf*, 248 NY at 344 ["it is risk to another or to others within the range of apprehension" that determines the scope of the duty]; Restatement [Second] of Torts § 371).

The Port Authority's attempt to distinguish *Kowalski* is not persuasive. It argues that in contrast to the instant case, the plaintiff in *Kowalski* made a strong evidentiary showing that the plaintiff's secondary-exposure injuries were foreseeable. Such evidence included facts showing that by 1954, Goodyear perceived the danger of third-party exposure to chemicals via clothing and that certain industry publications were in existence that warned against allowing employees to bring home their work clothing (*Kowalski*, 841 F Supp at 111). The Port Authority asserts that plaintiffs in this case have failed to produce any similar evidence that the Port Authority knew or should have known of the danger posed to the wife from secondary exposure to asbestos.

The Port Authority also cites the Tenth Circuit's decision in *Rohrbaugh v Owens-Corning Fiberglas Corp.* (965 F2d 844 [10th Cir 1992) to support its argument that a plaintiff must produce evidence that the defendant knew or should have known of the *specific* risk of secondary exposure in order to survive a summary judgment motion based on lack of duty. In *Rohrbaugh*, like the instant case, the plaintiff wife contracted mesothelioma from exposure to asbestos from laundering her husband's work clothes. The Tenth Circuit held that the defendant owed no duty to warn the wife of the dangers of asbestos since she was not a "foreseeable purchaser or user of the product" and there was "no evidence that [defendant] knew or should have known of the hazards associated with [its] products" (*Rohrbaugh*, 965 F2d at 846, 847). The Port Authority contends that *Rohrbaugh*, cited with approval but distinguished in *Kowalski*, requires summary judgment dismissal here.

We reject the Port Authority's argument that the alleged evidentiary deficiencies of plaintiffs' opposition warrant summary judgment in its favor. As movant, the Port Authority had the initial burden of demonstrating prima facie entitlement to judgment as a matter of law. This it has failed to do. The Port Authority relied exclusively on the *Widera* decision, and we have already determined that *Widera* does not control the outcome here. In the absence of any other basis for dismissal, the Port Authority's motion should have been denied without regard to the sufficiency of plaintiffs' opposition.

In any event, even if the Port Authority had met its initial burden, plaintiffs have submitted sufficient evidence to raise an issue of fact regarding defendant's actual or constructive knowledge of the risk of secondary exposure, mandating denial of defendant's motion. Plaintiffs have alleged that the Port Authority's provision of laundry service for its employees' dirty work clothes creates a strong inference that it was aware of the risk of employees bringing home asbestos-contaminated clothing. In addition, the Port Authority documents revealing discussions of the dangers of airborne asbestos to the area surrounding the World Trade Center raise an issue as to defendant's contemporaneous knowledge of the risk of off-premises exposure to bystanders. Finally, plaintiffs note that the precise manner in which the harm occurred need not be foreseeable, so long as the harm which occurs is within the reasonably foreseeable hazards that the duty exists to prevent (*Sanchez v State of New York*, 99 NY2d at 252; *Di Ponzio v Riordan*, 89 NY2d at 583-584).

Significantly, the plaintiffs were not required to prove that the Port Authority had *actual* knowledge of the risk of exposure through clothing in order to defeat summary judgment (*see Sanchez*, 99 NY2d at 254-255). In *Sanchez*, where it was alleged that an inmate-on-inmate assault resulted from negligent supervision by correction officers, the Court of Appeals explicitly rejected a "specific knowledge" test for foreseeability. Such a test, the Court stated, would "improperly modif[y] the test for foreseeability from what is reasonably to be perceived, to what is actually foreseen, and thus unduly circumscribe[ ] the standard of care normally due any party: reasonable care under the circumstances" (*id.* at 254). Based on the rule in *Sanchez*, it was sufficient in this case for plaintiffs to have raised an issue of fact as to whether the Port Authority *knew or should have known* of the danger of asbestos exposure through clothing, and in our opinion they have achieved that.

The Port Authority's remaining arguments against finding a duty in this case are equally unconvincing. The Port Authority has raised the specter of limitless liability and reminds us that courts, in fixing a duty, must "limit the legal consequences of wrongs to a controllable degree" (*Tobin v Grossman*, 24 NY2d at 619). However, the risk of unlimited liability is far less here than in the cases cited by the Port Authority. In *Tobin v Grossman* (at 618), for example, the Court refused to extend a tortfeasor's duty of care beyond an infant car accident victim to the victim's mother, since there would be "no rational way to limit the scope of liability" among persons similarly affected by witnessing an accident victim's injuries.

Similarly, in *Strauss v Belle Realty Co.*, which involved the potential tort liability of a utility company for consequential damages resulting from a blackout, the near impossibility of limiting the number of potential plaintiffs led the Court to restrict the scope of the duty to utility customers only (65 NY2d at 404-405). And in *Waters v New York City Hous. Auth.*, involving a person injured in a criminal assault which began on a public street but continued onto a landowner's property due to inadequate building security, the Court again found that the owner's duty to protect against criminal acts by third parties should not be extended to persons with no connection to the premises, especially given the owner's inability to control the attacker's conduct or the conditions on a public street (69 NY2d at 229-231).

In contrast to these scenarios, here the potential group of plaintiffs is limited and definable. Assuming the Port Authority knew or should have known of the dangers of secondary exposure,[2] it is hardly a quantum leap to extend the duty of care owed to employees to members of the employee's household who predictably come into routine contact with the employee's clothing. Such persons would certainly fall within the "range of reasonable apprehension" created by defendant's alleged negligence (*Palsgraf*, 248 NY at 345).

On the other hand, extending the duty to others who might foreseeably come into contact with the employee's clothing but whose contact with the employee is unpredictable and generally outside the scope of an employer's knowledge, such as car pool

---

**2.** The issue of whether the Port Authority knew or should have known of the risks of secondary exposure remains an open one, and our holding is limited to a finding that the Port Authority failed to demonstrate a lack of duty as a matter of law.

participants, bus drivers, elevator operators, etc., would stretch the concept of duty beyond any reasonable parameters. Accordingly, the scope of the Port Authority's duty should be limited to members of each employee's household who were exposed at home to asbestos dust from an employee's workplace clothes, by washing the clothes or otherwise. This limitation is both rational and sufficiently circumscribed by the principle of foreseeability. While this limitation is also arbitrary in a sense, and may in fact exclude otherwise viable negligence claims, such is the unavoidable result of balancing the competing interests of recognizing a duty where one ought be imposed and limiting any liability to a controllable degree (*see McNulty v City of New York*, 100 NY2d 227, 234-235 [2003] [Kaye, Ch. J., concurring]).

The Port Authority also argues that the absence of a special relationship between the wife and the Port Authority weighs against finding the existence of a duty in this case. It is true that the existence of a special relationship will increase the likelihood of imposing a duty (*see Tenuto v Lederle Labs.*, 90 NY2d 606, 614 [1997] [existence of special relationship between an infant, the infant's parents and the infant's doctor supplies the predicate for extending the duty to warn]; *cf. Eiseman v State of New York*, 70 NY2d at 188 [prison physician plainly owed a duty of care to his patient and to persons he knew or reasonably should have known were relying on his report, but he did not undertake a duty to the community at large]). However, privity is not a necessary precondition to finding a duty (*see Strauss v Belle Realty Co.*, 65 NY2d at 402), and, as noted, there is substantial legal authority demonstrating that an employer may owe a duty of care to nonemployees where the release of dangerous chemicals at the place of employment poses a reasonably foreseeable risk of injury to members of an employee's household (*see Baker*, 260 AD2d 750 [1999]; *Kowalski*, 841 F Supp 104 [1994]; *Fuller-Austin Insulation Co., Inc. v Bilder*, 960 SW2d 914 [Tex 1998]; *Anchor Packing Co. v Grimshaw*, 115 Md App 134, 692 A2d 5 [1997]).

Finally, we reject the Port Authority's argument that it is entitled to summary judgment because the allegations in the complaint are inapplicable to the plaintiff wife and defendant Port Authority since those allegations focus on asbestos exposure to employees (which the wife was not) by asbestos manufacturers and suppliers (which the Port Authority is not). The standard for measuring the sufficiency of pleadings is not

whether the proponent of the pleading has *stated* a cause of action, but rather whether the plaintiff *has* one (*see Leon v Martinez*, 84 NY2d 83, 88 [1994]; *Guggenheimer v Ginzburg*, 43 NY2d 268, 275 [1977]). While the complaint lacks a degree of clarity, the allegations as a whole, as supplemented by the plaintiffs' deposition testimony, sufficiently allege a claim by both plaintiffs against the Port Authority for failure to warn of the dangers of asbestos. Summary judgment is unwarranted on this ground.

In sum, as the Port Authority has failed to demonstrate entitlement to summary judgment, its motion should have been denied regardless of the sufficiency of the plaintiffs' opposition papers. We further note that discovery apparently was in the relatively early stages when the instant motion was filed, and plaintiffs may have been deprived of the opportunity to elicit facts necessary to oppose the motion (*see* CPLR 3212 [f]).

Accordingly, the order of the Supreme Court, New York County (Helen E. Freedman, J.), entered January 22, 2003, which granted defendant Port Authority's motion for summary judgment dismissing the complaint, should be modified, on the law, the negligence cause of action reinstated, and the matter remanded for further proceedings not inconsistent herewith, and otherwise affirmed, without costs.

NARDELLI, J.P., SAXE and SULLIVAN, JJ., concur.

Order, Supreme Court, New York County, entered January 22, 2003, modified, on the law, the negligence cause of action reinstated, and the matter remanded for further proceedings not inconsistent herewith, and otherwise affirmed, without costs.