**FULLER-AUSTIN INSULATION COMPANY, INC., Appellant,**

v.

**Kay BILDER and Frank Bilder, Appellees.**

No. 09–96–132 CV.

Court of Appeals of Texas, Beaumont.

Submitted Oct. 16, 1997.

Decided Jan. 8, 1998.

---

Ken W. Good, Julia Pendery, Cowles & Thompson, Tyler, for appellant.

Herschel L. Hobson, Joseph C. Blanks, Beaumont, Roger Worthington, Dallas, for appellees.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

## OPINION

BURGESS, Justice.

This is an appeal from a jury verdict against Fuller–Austin Insulation Company ("Fuller") an insulation subcontractor/installer. Kay and Frank Bilder brought an action to recover damages for personal injuries and loss of consortium stemming from Kay Bilder's childhood exposure to asbestos which ultimately caused mesothelioma. Fuller brings twelve points of error which we shall address out of order.

Kay Bilder lived in the household of her stepfather Ray Hardy, an insulator installer, from 1956 to 1960. She was later a frequent visitor to Hardy's home. Hardy routinely worked with asbestos insulation provided by Fuller under extreme dust conditions, and often went home doused with dust from head to toe. Kay frequently came into contact with the asbestos dust while washing Hardy's work clothes and cleaning up the dust shaken from his clothes. She eventually contracted mesothelioma and sued 25 companies, claiming exposure to asbestos products provided by various employers of Hardy. Kay died a few months after the case was submitted to the jury.

The jury found a defect in the marketing of asbestos insulation and found Fuller negligent for failing to warn of its dangers. The trial court entered judgment on the verdict.

### Marketing Defect

In its first point of error, Fuller argues the trial court erred in submitting a marketing defect question to the jury because Fuller had no duty to warn Kay Bilder of the dangers of asbestos because she was not a foreseeable user of a Fuller product and because her injury was not foreseeable at the time of her exposure to asbestos. Fuller maintains it owed no duty to Kay because it had no knowledge in 1956—1960 that household members of asbestos workers were at risk for contracting disease.

The standard of review for complaints about the court's charge to the jury is found in TEX.R. CIV. P. 278 providing "[t]he court shall submit the questions ... in the form provided by Rule 277, which are raised by the written pleadings and the evidence." A question of whether the charge has submitted the controlling issues in the case, in terms of theories of recovery or defense, is a question of law reviewable *de novo*. *See Continental Cas. Co. v. Street,* 379 S.W.2d 648, 651 (Tex.1964). *See also McFarland v. Sanders,* 932 S.W.2d 640, 644 (Tex.App.—Tyler 1996, no writ).

In the present case, we must decide whether the jury charge submitted concerning a marketing defect was a controlling issue in terms of a theory of recovery. A marketing defect occurs when a product is unreasonably dangerous because adequate warnings or instructions were not provided. *Sims v. Washex Machinery Corp.,* 932

S.W.2d 559, 561–62 (Tex.App.—Houston [1st Dist.] 1995, no writ) (citing *Joseph E. Seagram & Sons, Inc. v. McGuire,* 814 S.W.2d 385, 387 (Tex.1991)). To establish a theory of recovery based on marketing defect, a plaintiff must prove:

    1. a risk of harm is inherent in the product or may arise from the intended or reasonably anticipated use of the product;

    2. the product supplier actually knew or should have reasonably foreseen the risk of harm at the time the product was marketed;

    3. the product contains a marketing defect;

    4. the absence of a warning and/or instructions renders the product unreasonably dangerous to the ultimate user or consumer of the product; and

    5. the failure to warn and/or instruct must constitute a causative nexus in the product user's injury.

*Sims,* 932 S.W.2d at 562.

The evidence indicated that by 1956, Fuller knew or should have reasonably foreseen that inhaling asbestos dust posed a health hazard. The jury heard testimony that since 1944, Fuller had carried workers' compensation insurance which it knew covered the disease asbestosis and that since at least 1956, inhalation of the dust created in applying the products was "harmful to the body." Dr. John Dement, an expert in industrial hygiene, testified that it was known by the 1920s, and well established in the 1930s, that asbestos exposure caused disease. During trial, Dr. Dement reviewed published literature from 1913 to 1960 demonstrating that makers and sellers of asbestos products knew or clearly should have known that inhaling asbestos contaminated dust could cause incurable disease. Moreover, he noted that in 1955, a major human epidemiology study concluded that asbestos inhalation caused lung cancer in humans, confirming reports from 1940 and earlier. Dr. Dement also stated that lung cancer from asbestos dust inhalation had been well established by 1949. He testified that a state health department publication of 1937 warned about contamination of work clothing with toxic materials and the prevention of diseases in others

who might come in contact with soiled clothing.

The evidence at trial revealed that Fuller sold or supplied insulation which Hardy used on various jobs in 1956–1960. During that time period, Fuller did not warn the users or installers of asbestos of its potential harmful effects, did not train the installers to deal with the dust, did not tell its users or installers that exposure guidelines existed and did not provide any kind of coveralls to wear to work or laundry facilities for washing work clothes. Had Fuller provided the proper warnings of the dangers of asbestos, Hardy may have heeded the warnings and not exposed his family to work clothes which were covered with asbestos dust which ultimately caused Kay's death.

    ▮▮▮ Recovery under the strict liability doctrine is not limited to users and consumers. *Darryl v. Ford Motor Co.,* 440 S.W.2d 630, 633 (Tex.1969). The reason for extending the strict liability doctrine to innocent bystanders is the desire to minimize risks of personal injury and/or property damage. *Id.* Bystanders may recover for personal injuries or wrongful death caused by exposure to asbestos. *See Owens–Corning Fiberglas Corp. v. Martin,* 942 S.W.2d 712 (Tex.App.—Dallas 1997, no writ). Consequently, we reject Fuller's argument that it is not liable to Mrs. Bilder because she was not an actual or foreseeable user of asbestos. Because the Bilders presented evidence supporting each element of a marketing defect theory of recovery, we find the trial court properly allowed the marketing defect jury charge. We overrule Fuller's first point of error.

In points of error four and five, Fuller complains there was no evidence or insufficient evidence to support the jury's finding of a marketing defect. When both legal and factual sufficiency points are raised, we must first review the legal sufficiency point to determine if there is any evidence of probative value to support the jury's findings. *See In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951). The legal sufficiency review requires us to consider only the evidence and inferences that tend to support the jury's findings and to disregard all evidence and

inferences to the contrary. *Havner v. E–Z Mart Stores, Inc.,* 825 S.W.2d 456, 458 (Tex. 1992). If there is more than a scintilla of evidence to support the jury's findings, this court may not overturn the judgment on legal sufficiency grounds. *Sherman v. First Nat'l Bank in Center, Texas,* 760 S.W.2d 240, 242 (Tex.1988).

If we determine the findings are supported by legally sufficient evidence, we must then review the factual sufficiency of the evidence by weighing and considering the evidence both in favor of, and contrary to, the challenged findings. *See Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). The jury's findings must be upheld unless they are so against the great weight and preponderance of the evidence as to be manifestly unjust or erroneous. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986).

■ The evidence outlined above supporting the elements of a marketing defect theory of recovery amounts to more than a scintilla of evidence to support the jury's finding of a marketing defect. Considering all the evidence presented at trial, we do not find the jury's findings are against the great weight and preponderance of the evidence so as to be manifestly unjust or erroneous. Points of error four and five are overruled.

### Negligence

In its third point of error, Fuller complains the trial court erred in submitting a premises liability standard of care in connection with the negligence question submitted against Fuller because Fuller was not an owner, occupier or tenant of premises on which the use of asbestos containing products constituted a defect. Fuller alleges the definitions of negligence and ordinary care as defined for an owner, occupier or tenant of a premise was an improper attempt to impose a premises liability theory into the case.

■ The decision whether to submit an instruction or definition is reviewed for an abuse of discretion with the essential question being whether the instruction or definition aids the jury in answering a question. *Louisiana & Ark. Ry. Co. v. Blakely,* 773 S.W.2d 595, 598 (Tex.App.—Texarkana 1989,

writ denied). "Definitions shall be given as necessary to enable jurors to understand legal words or phrases used so that they may properly answer the special issues and render a verdict in the case." *Harris v. Harris,* 765 S.W.2d 798, 801 (Tex.App.—Houston [14th Dist.] 1989, writ denied). "The test of the sufficiency of a definition is its reasonable clarity in performing this function." *Id.*

■ To determine whether an alleged error in the submission of instructions or definitions is reversible, we must consider the pleadings, the evidence presented at trial, and the charge in its entirety. *Island Recreational Dev. Corp. v. Republic of Tex. Sav. Ass'n,* 710 S.W.2d 551, 555 (Tex.1986). "Alleged error will be deemed reversible only if, when viewed in the light of the totality of these circumstances, it amounted to such a denial of the rights of the complaining party as was reasonably calculated and probably did cause the rendition of an improper judgment." *Id.*

■ In the present case, we do not find any evidence in the record, nor do the Bilders direct us to any, demonstrating Fuller was ever an owner, occupier or tenant of a premises upon which Hardy was working. Thus we do not find the complained of definitions could have aided the jury in answering the charge. However, said error did not amount to such a denial of the rights of Fuller as was reasonably calculated to cause and probably did cause the rendition of an improper judgment. *See* TEX.R.APP. P. 81(b)(1). The charge did include proper definitions of *negligence* and *ordinary care.* We fail to see how the additional definitions of negligence and ordinary care as defined for an owner, occupier or tenant of a premise could have caused an improper judgment. Point of error three is overruled.

■ In points of error six and seven, Fuller complains there was no evidence or factually insufficient evidence to support the jury's finding of negligence. A negligence claim requires proof of these elements: 1) existence of a legal duty; 2) breach of that duty; and 3) damages proximately resulting from that breach. *Kehler v. Eudaly,* 933

S.W.2d 321, 327 (Tex.App.—Fort Worth 1996, writ denied).

■ At trial, Kay testified that she routinely was exposed to the asbestos dust brought home by her stepfather, Hardy. Former Fuller supervisor Dale Meeks and former Fuller employee Dale Collins testified that during the years relevant to Kay's exposure: 1) Fuller was a reselling distributor for various asbestos insulation manufacturers; 2) Fuller sold asbestos insulation as part of its contracts for fabrication and installation of insulation; 3) Fuller did not provide warnings that dust containing asbestos could cause disease; and 4) Hardy frequently used insulation provided by Fuller.

The uncontroverted medical testimony was that Kay's daily and direct exposure to asbestos in her home caused her mesothelioma. Dr. Sammuel Hammar, M.D., a pathologist specializing in asbestos cases, testified that after reviewing Kay's medical records, he believed the cause of her mesothelioma was asbestos. As stated above, bystanders may recover for personal injuries or wrongful death caused by exposure to asbestos. *Owens–Corning,* 942 S.W.2d at 712.

There is more than a scintilla of evidence to support the jury's finding of negligence. Considering all the evidence presented at trial, we do not find the jury's findings are against the great weight and preponderance of the evidence as to be manifestly unjust or erroneous. Points of error six and seven are overruled.

In its second point of error, Fuller complains the trial court erred in submitting a negligence question because Fuller had no duty to Kay Bilder, and the facts established that causation was legally insufficient to be proximate cause. TEX.R. CIV. P. 278 requires trial courts to submit requested questions to the jury if the pleadings and any evidence support them. *Elbaor v. Smith,* 845 S.W.2d 240, 243 (Tex.1992).

■ Our review of the record leads us to the conclusion that the trial court correctly allowed a negligence question in the jury charge because negligence was raised by the written pleadings and the evidence. As stated above, the Bilders presented evidence that

Fuller had a duty to Kay, a bystander exposed to asbestos, that it breached that duty by failing to warn of the dangers of asbestos, and that Kay was harmed by asbestos provided by Fuller. We consequently overrule Fuller's second point of error.

### Excluded Evidence

In point of error eight, Fuller complains the trial court erred in not allowing it to cross-examine plaintiffs' expert, John M. Dement and to question its own witness, Joseph Palermo about any post–1960 scientific evidence concerning asbestos related illnesses. Fuller maintains its evidence was relevant to demonstrate the link between household exposure and asbestos diseases was not established until well after 1960.

The Bilders argue the trial court correctly excluded the evidence because Fuller had refused to produce certain requested discovery regarding the same evidence on the grounds that documents accumulated after 1960 regarding asbestos were not relevant to the present case as 1960 was the final year in which dust from Fuller products went into Kay's childhood home. The trial court ordered Fuller to produce the discovery and Fuller consequently requested leave to file writ of mandamus from this court regarding the discovery. We denied their request and Fuller was waiting for a decision on the mandamus from the Texas Supreme Court when this case went to trial. The Bilders urge that Fuller had taken the judicial position that the evidence was not relevant to this lawsuit and thus the trial court correctly excluded the evidence at trial.

■ The admission and exclusion of evidence is committed to the trial court's sound discretion. *City of Brownsville v. Alvarado,* 897 S.W.2d 750, 753 (Tex.1995). A party seeking to reverse a judgment based on evidentiary error need not prove that but for the error a different judgment would necessarily have been rendered, but only that the error probably resulted in an improper judgment. *Id.* To successfully challenge the evidentiary ruling, the complaining party must show the judgment turns on the partic-

ular evidence excluded or admitted. *Id.,* at 753–54.

■ Fuller argues the excluded evidence showed the true state of the scientific knowledge and established it could not have known of the risks associated with asbestos until after 1960. The evidence excluded, contained in bills of exception, informed the jury of the dates Fuller allegedly became aware of the dangers of asbestos and began taking precautions to protect the health of its employees. The trial judge, however, did not prevent Fuller from showing that before 1960 it did not know exposure to asbestos carried home by workers was hazardous. In fact, Marion McManus, president of Fuller, testified at trial via oral deposition that he had only known asbestos causes asbestosis for the past five or six years. During closing argument, Fuller's counsel told the jury that as of 1960, nobody had proposed the necessity of zero exposure to asbestos and no government agency had required Fuller to put a warning on asbestos. He also argued Fuller did not know at that time asbestos dust could be harmful. Thus the jury heard argument that Fuller did not know of the dangers of asbestos during the time of the exposure. The excluded evidence shows the particular dates Fuller alleges it found out about the danger, but we are not convinced this evidence was so persuasive that the judgment turned on the particular evidence excluded. Consequently, point of error eight is overruled.

■ In point of error nine, Fuller complains the trial court erred in excluding the testimony of Dr. Corwin Hinshaw. In order for transcribed testimony from another proceeding to be admissible, the proponent of the evidence must show affirmatively that the declarant was "unavailable" as defined in TEX.R. CIV. EVID. 804(a). *Hall v. White,* 525 S.W.2d 860, 861–62 (Tex.1975). Unavailability of a witness means the witness is dead, has become insane, is physically unable to testify, is beyond the jurisdiction of the

court, is unable to be found after a diligent search, or has been kept away from the trial by the adverse party. *Id* at 862.

At trial, Fuller offered Dr. Hinshaw's testimony in the form of a transcript of a deposition given in another lawsuit in another state. The court sustained the Bilders' hearsay objection to the testimony. Fuller argues the testimony was admissible under the former testimony hearsay exception contained in Rule 804(b)(1) of the Texas Rules of Civil Evidence.[1]

In response to the Bilders' hearsay objection, Fuller's counsel argued that Dr. Hinshaw resided in California and was outside subpoena range. Additionally, Fuller's counsel stated they tried to contact Dr. Hinshaw the week before trial, that his son indicated to them that Dr. Hinshaw was 92 years old, was not cooperative and did not want to be bothered with this and was not able to be at trial. Counsel read into the record a copy of an affidavit dated December 14, 1989, from Hinshaw's doctor stating that Dr. Hinshaw was too ill to travel or present live testimony.

■ "Mere comments by an attorney are not sufficient proof of a declarant's unavailability." *Keene Corp.,* 863 S.W.2d 168 at 177 (citing *Garza v. Exxon Corp.,* 604 S.W.2d 385, 386 (Tex.Civ.App.—San Antonio 1980, no writ)). Even if counsel's statements had been taken as true, the fact that Dr. Hinshaw was uncooperative in attending trial did not mean he could not give his deposition in California. Although Dr. Hinshaw may have been beyond the subpoena power of the court, Fuller did not establish it was unable to take his deposition or otherwise procure his testimony in this cause. *See* TEX.R. CIV. EVID. 804(a)(5); *Hall,* 525 S.W.2d at 862. Additionally, the fact that Dr. Hinshaw was too ill in 1989 to attend trial does not necessarily mean that his physical ailment continues and presently prevents him from attending trial or from giving his deposition. The trial judge did not err in excluding the evi-

---

1. "Rule 804(b)(1) requires (1) that the party against whom the testimony is offered, or a person with a similar interest, had an opportunity and similar motive to cross-examine the witness and (2) that the declarant is unavailable to testify in the case in which a party attempts to offer his or her testimony." *Keene Corp. v. Rogers,* 863 S.W.2d 168, 177 (Tex.App.—Texarkana 1993, writ stayed).

dence. Fuller's ninth point of error is overruled.

### Statute of Repose

In its tenth point of error, Fuller complains the trial court erred in failing to grant an instructed verdict, in refusing to submit a jury question and in failing to grant a take-nothing judgment based on the statute of repose. Fuller claims the suit was barred under section 16.009 of the Texas Civil Practice and Remedies Code. Under that section, a claimant must bring suit against a person who constructs or repairs an improvement to real property not later than 10 years after the substantial completion of the improvement in an action arising out of a defective or unsafe condition of the real property or a deficiency in the construction or repair of the improvement. TEX. CIV. PRAC. & REM.CODE ANN. § 16.009 (Vernon 1986).

In the present case, we do not find the court erred in refusing to submit a statute of repose question to the jury. The Bilders made no claim that their loss stemmed from a defective or unsafe condition on real property or from a deficiency in the construction or repair of an improvement. Kay's claim is based on Fuller's failure to warn her stepfather of the danger of asbestos so he could guard against his family's exposure. Consequently, Section 16.009 does not apply. The statute was not a controlling issue in the case and thus the court did not err in refusing to submit a jury charge on the statute of repose.

"A directed verdict is proper when 1) a defect in the opponent's pleadings makes them insufficient to support a judgment, 2) the evidence conclusively proves a fact that establishes a party's right to judgment as a matter of law, or 3) the evidence offered on a cause of action is insufficient to raise an issue of fact." *Thedford v. Missouri Pac. R.R. Co.,* 929 S.W.2d 39, 50 (Tex.App.—Corpus Christi 1996, writ denied) (citing *Rowland v. City of Corpus Christi,* 620 S.W.2d 930, 932–33 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.)). In the present case, Fuller did not produce any evidence demonstrating that Kay's injury arose from an unsafe condition of real property or a deficiency in the construction or repair of the improvement. Consequently, the trial judge properly denied Fuller's request for a directed verdict and properly refused to grant a take-nothing judgement based on the statute of repose. Fuller's tenth point of error is overruled.

### Settlement Credit

In its eleventh point of error, Fuller alleges the trial court erred in refusing to allow it a dollar for dollar settlement credit and forcing Fuller to be bound by an election for the sliding scale credit made by a party that was no longer a defendant when the case was submitted to the jury. On the first day of trial, only two defendants remained—Fuller and Crown Cork & Seal ("Crown"). A week before trial, Fuller filed a written election for the dollar for dollar credit for plaintiffs' settlements, pursuant to TEX. CIV. PRAC. & REM. CODE ANN. § 33.012(b)(1) (Vernon 1997). On the second day of trial, Crown filed a written election for the sliding scale credit pursuant to Section 33.012(b)(2). Fuller moved to strike Crown's election but the trial court applied the sliding scale credit to the judgment. Fuller concedes that if conflicting elections are made, Section 33.014 forces all defendants into the sliding scale credit. It argues, however, that Crown's election was not valid because Crown settled and was nonsuited before the case was submitted to the trier of fact.

Under Section 33.012, if a claimant settles with anyone, the court shall reduce the amount of damages to be recovered by the claimant by either a dollar for dollar amount or by a statutorily set percentage of the damages (i.e., the sliding scale), at the defendant's election. An "election shall be made by any defendant filing a written election before the issues of the action are submitted to the trier of fact and, when made, shall be binding on all defendants. If no defendant makes this election or if conflicting elections are made, all defendants are considered to have elected Subdivision (2) of Section 33.012(b)." TEX. CIV. PRAC. & REM.CODE ANN. § 33.014 (Vernon 1997).

Only a "defendant" can make a binding election, and "defendant" is specifically

defined as "any party from whom a claimant seeks recovery of damages ... *at the time of the submission of the case to the trier of fact."* TEX. CIV. PRAC. & REM.CODE ANN. § 33.011(2) (Vernon 1997)(emphasis added). *University Preparatory Sch. v. Huitt,* 941 S.W.2d 177, 181–82 (Tex.App.—Corpus Christi 1996, writ denied). In light of this definition, Crown was not a "defendant" within the meaning of the statute because the Bilders did not seek recovery of damages from them at the time of submission of the case to the trier of fact. Consequently, Fuller should not have been forced to the sliding scale credit election made by Crown and the trial court should have allowed Fuller a dollar for dollar settlement credit. Point of error eleven is sustained.

### Prejudgment Interest

In point of error twelve, Fuller argues the trial court erred in calculating prejudgment interest on the full jury verdict amount, before applying the settlement credit Fuller was entitled to, and in accruing prejudgment interest during the statutory settlement period of 180 days after suit was filed.

Prejudgment interest accrues on the judgment rendered by the court, not on the verdict returned by the jury. *Owens–Corning Fiberglas Corp. v. Schmidt,* 935 S.W.2d 520, 524 (Tex.App.—Beaumont 1996, writ denied); *Roberts v. Grande,* 868 S.W.2d 956, 960 (Tex.App.—Houston [14th Dist.] 1994, no writ). The trial court thus erred in not applying the settlement credit before calculating prejudgment interest.

Prejudgment interest in personal injury and wrongful death cases involving an asbestos-related injury or disease or other latent injury or disease accrues from a date six months after the date the defendant received notice of the claim or the lawsuit was filed, whichever occurs first. *Owens–Illinois, Inc. v. Estate of Burt,* 897 S.W.2d 765, 769 (Tex.1995) (citing *Cavnar v. Quality Control Parking, Inc.,* 696 S.W.2d 549 (Tex. 1985)). We do not find in the record that the Bilders sent Fuller a notice of claim before filing suit. Therefore, prejudgment interest should have been calculated starting from the date six months after suit was filed. The trial court therefore erred in calculating prejudgment interest from the date the lawsuit was filed. Point of error twelve is sustained.

Consistent with our disposition of Fuller's eleventh and twelfth points of error, we remand the case to the trial court to recalculate prejudgment interest from the date six months after suit was filed and to recalculate the final judgment dollar amount pursuant to section 33.012(b)(1) of the Texas Civil Practice and Remedies Code. We affirm the remainder of the judgment.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART