NO. 07-03-0144-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



APRIL 29, 2004


 ______________________________



IN THE MATTER OF THE MARRIAGE OF LINDA N. MOON


AND DONALD RAY MOON AND IN THE INTEREST OF


MELINDA DAWN MOON, A CHILD


 

_________________________________



FROM THE 242ND DISTRICT COURT OF CASTRO COUNTY;



NO. 4533; HON. ED SELF, PRESIDING


_______________________________



Memorandum Opinion


_______________________________



Before QUINN, REAVIS and CAMPBELL, JJ.

 Appellant Donald Ray Moon (Donald) appeals an order of the trial court withholding
child support from his earnings. In doing so, he contends the trial court erred in 1) refusing
to allow the admission of a statement of personal or family history by an unavailable
declarant, and 2) overruling his affirmative defense of equitable estoppel. We affirm the
order of the trial court. 

 Background

 Donald and appellee Linda N. Moon (Linda) were divorced by decree dated May 15,
1978. A daughter, Melinda Dawn Moon (Melinda), was the only child born of the marriage,
and Linda was granted custody of the child. Donald was ordered to pay $33.00 per week
in child support. In October 1985, an order was entered modifying the parent-child
relationship requiring Donald to pay $200.00 per month with the first payment due
December 1, 1985. In February 1986, he signed an "Affidavit of Voluntary Relinquishment
of Parental Right" based on his belief that Linda's husband Toby Tucker was going to
adopt Melinda. That adoption never took place although the child did begin to use the
name Tucker. In 1989, both parties signed a document entitled "Joint Motion to Modify
Managing Conservatorship" in which Donald sought to be appointed sole managing
conservator of Melinda and to be released from all prior unpaid child support. That
document was never filed with the court. 

 Linda subsequently filed a notice of application for judicial writ of withholding on
January 9, 2003, seeking past child support payments. In response, Donald filed a motion
to dismiss and motion to stay the issuance of the writ alleging, among other things, the
"equitable doctrine of estoppel by laches" and that Melinda had been adopted by Linda's
husband Toby Tucker. A hearing was held on March 6, 2003, and the trial court
subsequently entered an order for withholding child support from earnings. In doing so,
the court found that Donald owed $12,000 in child support arrearage with $10,533.76
interest accrued through March 1, 2003. 

Issue One - Hearsay Statement


 In his first issue, Donald complains of the trial court's failure to allow the admission
of a sworn written statement allegedly made in 2001 by Melinda in which she stated that
Donald had given up all parental rights to her when she was 12 years of age, and she was
then adopted by Toby Tucker. We overrule the issue.

 Donald contends that the statement was admissible under Rule 804(a)(5) of the
Rules of Evidence. That rule provides an exception to the hearsay rule when the declarant
is unavailable. It permits a statement "concerning the declarant's own birth, adoption,
marriage, divorce, legitimacy, relationship by blood, adoption, or marriage, ancestry, or
other similar fact of personal or family history even though the declarant had no means of
acquiring personal knowledge of the matter stated. . . . " Tex. R. Evid. 804(b)(3). A witness
is unavailable when the declarant "is absent from the hearing and the proponent of the
declarant's statement has been unable to procure the declarant's attendance or testimony
by process or other reasonable means." Tex. R. Evid. 804(a)(5). It is the proponent of the
statement who has the burden to affirmatively show that the witness is unavailable. 
Owens-Corning Fiberglas Corp. v. Wasiak, 917 S.W.2d 883, 888 (Tex. App.--Austin 1996),
aff'd, 972 S.W.2d 35 (Tex. 1998); Keene Corp. v. Rogers, 863 S.W.2d 168, 177 (Tex.
App.--Texarkana 1993, writ stayed). We review the trial court's ruling for an abuse of
discretion. Otero-Miranda v. State, 746 S.W.2d 352, 355 (Tex. App.--Amarillo 1988, writ
ref'd, untimely filed). 

 At the hearing, there was testimony from Donald that Melinda resided in Missouri. (1) 
A witness is not unavailable unless a good faith effort has been made to procure her
attendance. Otero-Miranda v. State, 746 S.W.2d at 355. Even if the evidence of Melinda's
residence was sufficient to establish that Melinda was beyond the subpoena power of the
court, Donald failed to establish that he was unable to take her deposition or otherwise
procure her testimony. See Fuller-Austin Insulation Co. v. Bilder, 960 S.W.2d 914, 921
(Tex. App.--Beaumont 1998, pet. and cause dism'd); Owens-Corning Fiberglas Corp. v.
Wasiak, 917 S.W.2d at 888. Therefore, we can find no abuse of discretion on the part of
the trial court in sustaining the hearsay objection. 

Issue Two - Defense of Equitable Estoppel


 Via his second issue, Donald challenges the trial court's overruling of his affirmative
defense of equitable estoppel. We overrule the issue.

 The grounds for filing a motion to stay the issuance of a writ of withholding are
limited to a dispute concerning the identity of the obligor or the existence or the amount of
arrearages. Tex. Fam. Code Ann. §158.397(b) (Vernon 2002). However, the defense of
equitable estoppel can be asserted in appropriate circumstances. In re Digges, 981
S.W.2d 445, 447 (Tex. App.--San Antonio 1998, no pet.). Donald pled the affirmative
defense of "estoppel by laches." Laches is a defense based on an unreasonable delay in
the assertion of equitable or legal rights and a good faith change of position by another to
his detriment due to the delay. In re Moragas, 972 S.W.2d 86, 92 (Tex. App.--Texarkana
1998, no pet.). Laches is not available in a suit for enforcement of a statutory legal right
such as the collection of child support. In re M.W.T., 12 S.W.3d 598, 604 (Tex. App.--San
Antonio 2000, pet. denied); Ex parte Payne, 598 S.W.2d 312, 318 (Tex. App.--Texarkana
1980, no writ), overruled on other grounds by Huff v. Huff, 648 S.W.2d 286 (Tex. 1983). 
 However, on appeal, Donald argues the defense of equitable estoppel by virtue of
his execution of a voluntary relinquishment of parental rights under the belief the child was
to be adopted by Linda's new husband Toby Tucker, his nonpayment of further child
support after execution of the document, the use by the child of the last name of Tucker
after execution of the document, the lack of any visitation rights after execution of the
document, and Linda's failure to ever tell him his parental rights had not been terminated. 
An affirmative defense is generally waived if not pleaded. Shoemake v. Fogel, Ltd., 826
S.W.2d 933, 937 (Tex. 1992); Alvarado v. Wingfoot Enterprises, 53 S.W.3d 720, 725 (Tex.
App.--Houston [1st Dist.] 2001), rev'd on other grounds, 111 S.W.3d 134 (Tex. 2003).
Because Donald did not plead the defense of equitable estoppel, it has not been preserved
for appeal. 

 However, even if we liberally construe his pleading to assert that defense, the
elements of estoppel are: 1) false representation or concealment of material facts, 2)
made with actual or constructive knowledge of those facts, 3) to a party without knowledge,
or the means of knowledge, of those facts, 4) with the intention that it should be acted on,
and 5) the party to whom it was made relied or acted on it to his prejudice. Kawazoe v.
Davila, 849 S.W.2d 906, 909 (Tex. App.--San Antonio 1993, no writ); LaRue v. LaRue, 832
S.W.2d 387, 392 (Tex. App.--Tyler 1992, no writ). In contending that those elements exist,
Donald relies on Kawazoe v. Davila, 849 S.W.2d at 909-10, in which the court affirmed the
denial of a motion for enforcement of a child support order by contempt when the former
husband had signed a relinquishment of his parental rights under the belief the child would
be adopted by his former wife's new husband and, for 13 years, she represented to him
on a number of occasions he was no longer the child's father even when she knew his
parental rights had not been terminated and no adoption would take place, she denied him
visitation rights, and the child began to use her new husband's name. 

 Donald claims that he had no reason to believe the adoption had not taken place
and he knew that his daughter went by the name of Tucker. Further, both Linda and his
daughter represented to him she had been adopted, and no child support was requested
by Linda. However, the evidence also shows that Melinda came to stay with him and his
new wife in 1989 for a period of time, and Donald signed a motion to modify managing
conservatorship because he and his wife felt she was old enough to "get to know her
daddy." Given the existence of a preexisting order regarding the conservatorship of
Melinda, Donald's signing a document purporting to change that prior order and vest
conservatorship of Melinda in him hardly connotes that his parental relationship with
Melinda had been terminated through her adoption by a third party. Simply put, it is some
evidence upon which the factfinder could conclude that Donald knew no one adopted his
daughter and his parental relationship with the child had not ended. See LaRue v. LaRue,
832 S.W.2d at 394 (holding knowledge that a child has reverted back to the father's
surname in spite of an apparent termination of the parent-child relationship placed the
father on notice that he should investigate the termination and adoption proceeding). 

 If a party conducts himself with careless indifference to means of information
reasonably at hand or ignores suspicious circumstances, he may not benefit from the
defense of estoppel. Barfield v. Howard M. Smith Co., 426 S.W.2d 834, 839 (Tex. 1968);
In re Moragas, 972 S.W.2d at 91. Based on these facts and the trial court's ability to
observe the demeanor and credibility of the witnesses, we cannot say the trial court erred
in failing to determine that Linda was equitably estopped from obtaining a withholding
order. In short, there exists evidence of record negating Donald's implicit argument that
he proved the defense of equitable estoppel as a matter of law. 

 Accordingly, the order of the trial court is affirmed.


 Per Curiam
1. There was no evidence at the hearing that Melinda was unable to attend because of a snowstorm
as Donald asserts on appeal. 



 src="07-06-0437-cvopinion/footnoteicon.gif" alt="Footnote" width="16" height="14" border="0">

 
          Partee does not appear to dispute whether he was intoxicated in a motor vehicle in
a public place. Neither does he dispute the lower court’s findings as to issues (3) and (4). 
Rather, he contends the trial court erred in its finding that probable cause existed to believe
he was “operating” a motor vehicle. Because Partee was asleep when Bingham first
approached his vehicle, he asserts he could not have been “operating” a motor vehicle. 
He next contends no reasonable suspicion existed to detain him because his truck was
legally stopped on the roadside and was stationary. As a result, Partee asserts his
removal from the pickup by Bingham was an illegal detention in violation of the Fourth
Amendment and, consequently, all evidence obtained afterwards should be suppressed
under the “fruit of the poisonous tree” doctrine. Finally, Partee asserts there was
insufficient evidence for the ALJ to find probable cause existed for his arrest. 
Standard of Review
          We review administrative license suspension decisions under a substantial evidence
standard. Mireles v. Tex. Dep’t of Pub. Safety, 9 S.W.3d 128, 131 (Tex. 1999); Tex. Dep’t.
of Pub. Safety v. Moore, 175 S.W.3d 270, 272 (Tex.App.–Houston [1st Dist.] 2004, no pet.);
Tex. Dep’t. of Pub. Safety v. Pucek, 22 S.W.3d 63, 67 (Tex.App.–Corpus Christi 2000, no
pet.). Under this standard, the administrative decision may not be reversed unless it
prejudices the substantial rights of an appellant because the administrative findings,
inferences, conclusions, or decisions are: 
(A) in violation of a constitutional or statutory provision;
(B) in excess of the agency’s statutory authority;
(C) made through unlawful procedure;
(D) affected by other error of law;
(E) not reasonably supported by substantial evidence considering the reliable
and probative evidence in the record as a whole; or
(F) arbitrary or capricious or characterized by abuse of discretion or clearly
unwarranted exercise of discretion.
 
Tex. Gov’t Code Ann. § 2001.174(2) (Vernon 2000).
 
          We cannot substitute our judgment for the ALJ’s and must affirm the administrative
decision if it is supported by more than a scintilla of evidence. Mireles, 9 S.W.3d at 131. 
Thus, the issue is not whether the ALJ made a correct decision, but whether there is some
reasonable basis in the record to support the ALJ’s decision. Id. The ALJ’s findings,
inferences, conclusions, and decisions are presumed to be supported by substantial
evidence and the burden is on Partee to prove otherwise. City of El Paso v. Public Util.
Comm’n, 883 S.W.2d 179, 185 (Tex. 1994). The burden for overturning an agency ruling
is formidable, Pucek, 22 S.W.3d at 67, and the administrative decision may be sustained
even if the evidence preponderates against it. Mireles, 9 S.W.3d at 131.  
          I.        “Operating” A Motor Vehicle
          A person commits the offense of driving while intoxicated if the person is intoxicated
while operating a motor vehicle in a public place. See Tex. Penal Code Ann. § 49.04(a)
(Vernon 2003). While there is no statutory definition of the term “operate,” the Texas Court
of Criminal Appeals has determined that a person “operates” a vehicle when the totality of
the circumstances demonstrate the person took action to affect the functioning of the
vehicle in a manner that would enable its use. Denton v. State, 911 S.W.2d 388, 390
(Tex.Crim.App. 1995) citing Barton v. State, 882 S.W.2d 456, 460 (Tex.App.–Dallas 1994,
no writ). In Denton, the Court of Criminal Appeals held that “while driving does involve
operation, operation does not necessarily involve driving.” Id. at 389. Applying this
rationale, Partee’s application of the brake pedal, thereby restraining the vehicle’s actual
movement, falls within the definition of “operating a motor vehicle.” 
          Moreover, under § 724.042, the DPS is not required to prove Partee was in fact
“operating” a motor vehicle while intoxicated in order to suspend his license. See Tex.
Dep’t of Pub. Safety v. Butler, 110 S.W.3d 673, 677 (Tex.App.–Houston [14th Dist.] 2003,
no pet.). Because a license suspension is a civil matter, the DPS need only establish there
was probable cause to believe Partee was operating a motor vehicle while intoxicated. 
Church v. State, 942 S.W.2d 139, 140 (Tex.App.–Houston [1st Dist.] 1997, pet. ref’d). 
Thus, Partee’s first issue is a narrow one. That is, whether there is substantial evidence
in the record to support the ALJ’s finding that probable cause existed to believe Partee was
“operating” a motor vehicle even though he was initially found asleep.


 
          There are numerous cases where a DWI arrest or conviction has been upheld under
the totality of circumstances test even though the person “operating” the motor vehicle was
initially found to be asleep. For instance, person(s) asleep were found to be “operating”
their motor vehicle where the vehicle was parked by the roadway with its right front tire
against the curb, engine running, gearshift in “Drive” and lights on, Freeman v. State, 69
S.W.3d 374, 376 (Tex.App.–Dallas 2002, no pet.); stopped in a moving lane of traffic with
engine running, and the vehicle’s owner in the driver’s seat, Hearne v. State, 80 S.W.3d
677, 680 (Tex.App.–Houston [1st Dist.] 2002, no pet.); or stopped on a roadway with engine
running, lights on and the vehicle’s operator sitting behind steering wheel, State v. Savage,
III, 905 S.W.2d 272, 274 (Tex.App.–San Antonio 1995), aff’d 933 S.W.2d 497
(Tex.Crim.App. 1996).  
          Furthermore, prior to the adoption of the totality of circumstances test, person(s)
who were asleep were found to be “operating” their motor vehicle when the vehicle was
stopped in the middle of the road with engine running, gearshift in “Drive,” and operator
slumped behind the steering wheel with his foot on the brake, Ray v. State, 816 S.W.2d
97, 98 (Tex.App.–Dallas 1991, no writ); stopped in the roadway with engine running, lights
on and vehicle’s owner sitting behind the steering wheel, Pope v. State, 802 S.W.2d 418,
420 (Tex.App.–Austin 1991, no writ); stopped in the roadway at a location described by
anonymous tip facing oncoming traffic with engine running, lights on, and operator asleep
in driver’s seat with his foot on the brake, Hernandez v. State, 773 S.W.2d 761, 762
(Tex.App.–San Antonio 1989, no writ); and, vehicle found half in a ditch and half on a farm-to-market road with the operator alone behind the steering wheel with both feet on the
floorboard beneath the steering wheel, Reynolds v. State, 744 S.W.2d 156, 158-59
(Tex.App.–Amarillo 1987, writ ref’d).
          After receiving a call that a truck was weaving on US 87, Bingham was dispatched
to the area. Shortly thereafter, he encountered Partee’s truck near the location on the
highway where the pickup was reported to be weaving. Partee’s pickup matched the
description of the weaving vehicle and it was found to be straddling the shoulder and a
roadside ditch. Partee was alone and asleep behind the steering wheel with his foot on
the brake. His keys were in the ignition with the engine running, the brake lights
illuminated, and the gearshift engaged. Even though Partee was asleep, there is
substantial evidence to support the ALJ’s finding that there was probable cause to believe
Partee was operating a motor vehicle when he was discovered by Bingham. Partee’s first
issue is overruled. 
          II.       Reasonable Suspicion To Detain Or Stop
          Partee also asserts he was illegally detained when Bingham removed him from his
pickup and, as a result, any evidence obtained subsequent to his detention should have
been excluded from the administrative proceedings to suspend his license. In support, 
he asserts his detention stemmed solely from an anonymous tip in the absence of any
corroborating circumstances indicating he was operating a motor vehicle while intoxicated.
          There are three distinct categories of interactions between police officers and
citizens: encounters, investigative detentions, and arrests. State v. Perez, 85 S.W.3d 817,
819 (Tex.Crim.App. 2002). Encounters occur when police officers approach an individual
in public to ask questions, and do not require any justification whatsoever on the part of the
officer. Harper v. State, 217 S.W.3d 672, 674 (Tex.App.–Amarillo 2007, no pet.). 
Moreover, police officers do not violate the Fourth Amendment by merely approaching an
individual in a public place, by asking him if he is willing to answer some questions, by
putting questions to him if the person is willing to listen, or by offering in evidence in a
criminal prosecution his voluntary answers to such questions. Perez, 85 S.W.3d at 819.
           A stop is deemed an investigative detention when a police officer detains a person
reasonably suspected of criminal activity to determine his identity or to momentarily
maintain the status quo while seeking additional information. Hoag v. State, 728 S.W.2d
375, 380 (Tex.Crim.App. 1987). A law enforcement officer need not have probable cause
to detain an individual for investigative purposes. See Hall v. State, 74 S.W.3d 521, 525
(Tex.App.–Amarillo 2002, no pet.). Rather, the officer may conduct a temporary lawful
detention when he has a reasonable suspicion to believe a person is violating the law. 
Ford v. State, 158 S.W.3d 488, 492 (Tex.Crim.App. 2005). Reasonable suspicion exists
if the officer has specific, articulable facts that, when combined with rational inferences
from those facts, would lead him to reasonably suspect a particular person has engaged
or is (or soon will be) engaging in criminal activity. Garcia v. State, 43 S.W.3d 527, 530
(Tex.Crim.App. 2001). The facts must create some reasonable suspicion that some
activity out of the ordinary is occurring or has occurred, some suggestion to connect the
detainee with the unusual activity, and some indication that the unusual activity is related
to crime. Davis v. State, 947 S.W.2d 240, 244 (Tex.Crim.App. 1997). That said, the acts
or circumstances need not be criminal in themselves to create reasonable suspicion. 
Woods v. State, 956 S.W.2d 33, 38 (Tex.Crim.App. 1997). Thus, we examine the totality
of the circumstances to determine whether Partee’s detention was reasonable and
justified.
          As previously discussed, Bingham was dispatched to investigate an anonymous tip
regarding possible criminal activity. Upon arriving at the scene, Bingham observed
Partee’s vehicle, with its engine running, straddling the shoulder and roadside ditch. 
Partee appeared to be asleep at the wheel. Unable to awaken Partee, Bingham then
opened the driver-side door and moved the gearshift to the “Park” position. Partee awoke
appearing confused. Up to this point, Bingham was engaged in an “encounter” with
Partee, and the record reflects no evidence indicating Bingham’s actions were such a
display of authority that a reasonable person would not have felt free to decline Bingham’s
request for compliance. See Harper, 217 S.W.3d at 674 (collected cases cited therein).
           As the two were talking, Bingham noticed a strong odor of alcohol emanating from
inside the cab. Bingham asked if Partee had been drinking, and he responded he had
drank a few beers several hours earlier. Partee also admitted there was alcohol in the
pickup. At this point, Bingham had specific articulable facts which, when combined with
rational inferences therefrom, allowed him to reasonably suspect Partee had been, and
was, operating a motor vehicle in a public place while intoxicated. Accordingly, Partee’s
subsequent detention was reasonable and justified. 
          Partee contends his detention was unreasonable because he was legally parked 
on the roadside. In determining whether an area is a public place for purposes of § 49.04,
the relevant inquiry is whether the public has access to the place. Shaub v. State, 99
S.W.3d 253, 256 (Tex.App.–Fort Worth 2003, no pet.). That Partee stopped in a public
place merely satisfied an element of the offense of driving while intoxicated and buttressed
Bingham’s reasonable suspicion. Whether Partee was legally parked is of no
consequence. 
          Partee also contends Bingham lacked reasonable suspicion because he did not
actually “see” Partee operate the pickup and did not know how long Partee had been
stopped by the roadside. Partee hypothecates that he could have parked his pickup by the
roadside and then became intoxicated. Under this proposed scenario, Partee asserts he
may have been publicly intoxicated but not intoxicated while operating a motor vehicle. As 
discussed above, “operating” a vehicle is not limited to “driving” a vehicle. Under the facts
of this case, Bingham was justified in believing that Partee was operating his vehicle. 
Accordingly, in light of the totality of the circumstances, substantial evidence supported the
ALJ’s determination that reasonable suspicion existed to detain Partee. His second issue
is overruled. 
          III.      Probable Cause To Arrest
          Partee contends there was insufficient evidence for the ALJ to find that Calloway
had probable cause to arrest him for operating a motor vehicle in a public place while
intoxicated. We have already ruled there was substantial evidence in support of the ALJ’s
finding that probable cause existed that Partee was “operating” his pickup when he was
discovered by Bingham–even though he was asleep. And, having stopped by the side of
a highway accessible to the public, Partee and his vehicle were plainly situated in a public
place. This leaves us with the final element of the offense – intoxication. Accordingly, we
examine whether there was substantial evidence supporting the ALJ’s determination that
probable cause existed, at the time of Partee’s arrest, that he was intoxicated. 
          Trooper Callaway arrived shortly after Partee was detained and continued the
investigation.


 Callaway immediately smelled alcohol on Partee. Partee’s speech was
slurred, his eyes were bloodshot, he swayed when he stood, and relied on his truck for
balance when walking. Partee admitted he had been drinking earlier and acknowledged
there were open containers of alcohol in the pickup. When Callaway informed Partee he
was going to administer field sobriety tests, Partee refused to cooperate. Partee also
refused a preliminary breath test and, after he was given statutory warnings and requested
to provide a breath test, he again refused. Callaway arrested Partee and placed him in his
cruiser. On the way to the jail, Partee passed out several times. Based upon this record,
a finding of intoxication was supported by sufficient probable cause. Partee’s third issue
is overruled. 
 Conclusion
          Having overruled all three issues, the trial court’s judgment is affirmed.
 
                                                                           Patrick A. Pirtle

                                                                                  Justice